JOSEPH W. CARPER *et al.*

*v.*

MORDECAI CROWL *et al.*

*Filed at Springfield April 2, 1894.*

1. WILL—*election of widow to take under.* Where a widow fails to renounce the benefit of a devise to her by her husband, in his will, within one year from the probate thereof, in accordance with sections 10 and 11 of the statute relating to dower, she will be presumed to have elected to take under the will.

2. The effect of the widow's failure to renounce under the statute is to bar only her dower and distributive share of her husband's estate as widow, and nothing more.

3. SAME—*election to take under devise.* If property of a third person is devised, and in the same will a benefit is given to such third person, which is accepted with knowledge of all the facts and of the rights of the donee accepting, the acceptance is regarded as a confirmation of the dispositions made by the will. So if a testator intending to dispose of his property, includes in the disposition property of another person, and at the same time gives to such other person an interest in the estate of the testator, such person will not be permitted to defeat the disposition made by the will and at the same time take under it. He is put to his election whether he will retain his own property or take the benefit conferred by the will.

4. SAME—*election—compensation to party injured.* Where a testator has made a disposition of property not his own, and has given a benefit to the person to whom it belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition. If, on the contrary, he chooses to enforce his proprietary right as against the testator's disposition, equity will sequester the benefit intended for the refractory donee, in order to secure compensation to those whom his election disappoints, and, after making such compensation, restore the surplus, if any, to the donee.

5. SAME—*when no compensation awarded.* There can be no compensation awarded when no fund or interest will pass, under the will, to the donee compelled to elect, which can be sequestered to compensate the beneficiaries who are disappointed by the election.

6. It would seem indispensable to the application of the doctrine of election that there be, first, a plurality of gifts, or two inconsistent or alternative rights or claims in property devised, the choice of one by the devisee being intended to exclude him from the benefit of the

other; and second, in case the property of the devisee is disposed of by the will, and he chooses to assert his right to such property, against the will, that there be a fund for his benefit, given by the will, which can be laid hold of to compensate the parties whose right to take under the will is defeated by the election.

7. SAME—*whether party takes under the will or by descent.* A testator devised to his wife, for life, 436½ acres of land, in 180 acres of which he held a life estate by the curtesy, the remainder being in his wife. There was no devise over of the land devised to the wife, nor was there any residuary clause under which the title might pass: *Held,* that the land so devised, except the 180-acre tract, passed to the heirs of the testator under the law of descent, and not by virtue of the provisions of the will.

8. SAME—*devise to widow in lieu of dower—when widow takes as purchaser.* Where the provision made in a will is not in excess of what the widow would take without the will, if she elects to take under the will she will take, not as a beneficiary, but as a purchaser. A provision in a will in lieu of dower is, in fact and in legal effect, a mere offer by the testator to purchase out the dower interest for the benefit of his estate.

9. SAME—*legacy—when a disposition of land.* Pecuniary legacies charged on land are, so far as they are made a charge thereon, to be considered as dispositions, *pro tanto,* of the realty.

10. SAME—*legacy—when contingent and when vested.* If the payment of a legacy be postponed with reference to the circumstances of the devisee, as, in case of a legacy to A to be paid at the age of twenty-one years, the bequest fails unless the devisee lives to the time of payment. But, on the other hand, if the postponement of payment appears to have reference to the situation or convenience of the estate, as, if land be devised to A for life, remainder to B in fee, charged with a legacy to C, payable at the death of A, the legacy will vest instanter, and, consequently, if C dies before the day of payment, his representatives will be entitled.

11. REMAINDERS—*when vested and when contingent.* The rule is well established that a remainder will not be held to be contingent unless, from the language of the instrument, that result is manifestly intended, otherwise the estate will be regarded as vested.

12. The principles applicable to the vesting of devises of real estate apply, generally, to gifts of personal property. Where, however, there is no original gift of personalty, but only a direction to pay at a future time, the vesting will ordinarily be postponed until the time of payment. But if it appear that the time relates only to the payment, and is not annexed to the substance of the gift, the legacy is at once vested.

13. In the former case, that is, where there is no other gift than the mere direction to pay *in futuro,* the doctrine already announced applies.

And if it appear that the payment or disposition is postponed for the convenience of the estate, the legacy becomes vested at once, and is not postponed until the time of payment, the rule being, that if the payment or distribution is postponed because of the position of the fund or the convenience of the estate out of which it is to be paid, the legacy will vest at once, and the time of payment, only, is postponed; on the other hand, if the postponement be for reasons personal to the legatee or devisee, the remainder is contingent.

14. A testator devised his homestead to his wife for life or during her widowhood, after which he ordered that his daughter should have her support out of the avails of the homestead during the life or widowhood of his wife, and at her death or marriage to have out of said homestead $3000. The daughter died first: *Held,* that there was no contingency in respect to the time when the legacy to the daughter should vest in possession, and that the postponement related only to the time of payment, and was in no way annexed to the substance of the gift, and that the legacy vested *in presenti* in the daughter on the testator's death, and upon her death went to her personal representatives, postponed until the happening of the event upon which it was payable.

15. SAME—*fund liable for.* In such case the legacy to the daughter was a charge upon the real estate designated as the homestead, and a fund was thereby created out of which it should be paid; and it follows, that unless the fund thus created has failed, it is alone liable for the payment thereof. It is unimportant that a part of such fund fails, if sufficient remains to satisfy the legacy; nor does the fact that the title to the land is in the legatee, under the circumstances of this case, merge or abate any portion of the devise.

16. Where the person in whose favor the charge exists comes into the inheritance upon which the legacy is charged, there is a merger, either total or *pro tanto,* of the legacy. But that principle has no application where the testator had no power to make the land subject to a charge by him.

17. ELECTION—*when compelled, in equity.* The equitable doctrine of election originated from repugnant positions in respect of inconsistent or alternative gifts, when there was an intention, either express or implied, that one, and not both, should be taken; and as courts of law could not compel the party to make an election, courts of equity, to carry into effect the purpose and intention of the donor, assumed jurisdiction to declare that the donee, not being entitled to retain both, should elect which he would take.

18. SAME—*when made, is binding.* Where one has an election between several inconsistent courses of action, he will be confined to that he first adopts; and any decisive act done with knowledge of his rights and of all the facts, determines his election and estops him from

asserting the contrary. To so bind a party it is necessary that the election be made with full knowledge of all the facts, and if made by mistake or under misapprehension, or in ignorance of the facts or the rights of the parties, it will not be conclusive.

19. SAME—*action on advice of counsel.* Where a widow has acted upon the advice of counsel that the right given her by a will is not inconsistent with her claiming the same, this will not amount to an election on her part.

20. SAME—*when may be revoked.* Where the rights of third persons have not intervened, an election made in ignorance or under misapprehension of the effect of the act, or the extent of the party's right, is not binding, and may be revoked.

21. ESTATE BY THE CURTESY—*devise of land by the husband—effect on widow's title.* A testator owned 256 acres of land in his own right and 180 by the curtesy, the remainder being in his wife. These lands constituted his homestead. He devised a life estate in both tracts to his wife, besides a large amount of personal property. He made various devises to his children in fee, but made no devise over of the homestead after the life estate. Acting on legal advice that a failure to renounce the will would not affect her title to the 180 acres, the widow continued to occupy the tracts constituting the homestead : *Held*, that the title of the widow and her assigns to the 180-acre tract was unaffected by the will.

22. GIFT—*must be taken on terms of donor.* He who accepts the bounty of another must do so upon the terms and conditions, express or implied, the donor may impose. The beneficiary can not insist that the provisions in his favor be executed and those to his prejudice disregarded. As ordinarily expressed, he can not take under a will and also contrary to its provisions.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This was a bill in chancery for partition, brought by appellees, Mordecai Crowl and wife, in the circuit court of Sangamon county, seeking construction of a will, and invoking the doctrine of election.

Joseph Crowl and Mary Ann Crowl were married and had issue prior to 1844. In 1844 Mary Dillahunt, a widow, the mother of Mrs. Crowl, died intestate, seized of the east half of the south-west quarter and the west half of the north-east quarter of section 19, township 15, north, range 3, west of

the third principal meridian, in Sangamon county, Illinois, containing 180 acres, and Mrs. Crowl, being the only child, inherited said land from her mother. Joseph Crowl, by virtue of his marital rights, (curtesy,) from the death of Mrs. Dillahunt had the land assessed in his own name and used and enjoyed it as his own. He lived with his wife and family in the house situated on part of the premises, which was contiguous to some of his own land, until he died, September 8, 1865. Prior to his death, June 14, 1865, he made his will, which was duly probated, in and by which he disposed of 510 acres of land among his children, and gave some of them money legacies. He also provided in clauses 8 and 9 of his will:

Clause 8. "I give, devise and bequeath to my beloved wife, Mary Crowl, the homestead, to-wit: (Here follows description, including the land inherited by Mrs. Crowl from her mother, and 105 acres in Christian county, Illinois,) containing in all 436½ acres, during her natural life, or so long as she shall remain my widow. Also, I give and bequeath to my wife the following personal property, to-wit: All the household furniture, all the farming tools, all the horses and colts belonging to the farm, all the cattle on the farm, all the hogs on the farm, also all the buggies, wagons and harness on the farm, during her natural life, or so long as she shall remain my widow." No further disposition is made of the real estate by the will.

Clause 9. "I do hereby devise and order that my daughter, Maria Antoinette Crowl," (afterward, by marriage, Carper,) "shall have her support out of the avails of said homestead during the lifetime or widowhood of my said wife, and at her death or marriage to have out of said homestead $3000."

No widow's award was set off to Mrs. Crowl. The personal property mentioned in clause 8 of the will, and a little additional, was turned over to Mrs. Crowl. It was received by her as her absolute property.

No final settlement of Joseph Crowl's estate has ever been made. Two partial settlements were made: The first on November 29, 1869, and the second on December 15, 1871. The amount on hand, as shown by these settlements, for the payment of legacies and for distribution, was a little over $14,000. The real estate of which Joseph Crowl was seized in his own right amounted to $661\frac{1}{2}$ acres of tillable land and 105 acres of timber land,—in all, $766\frac{1}{2}$ acres. The widow did not file a written renunciation of the will. After the death of her husband she always claimed the land descending to her from her mother, as her own absolute property. She so spoke of it in the presence of her children. She took possession of it with the other land mentioned in clause 8 of the will. On February 12, 1875, for the expressed consideration of one dollar and natural love and affection, she, by a warranty deed, conveyed it to her daughter, Maria A. Carper, in fee, reserving a life estate to herself. Maria A. Carper died intestate November 20, 1884, leaving her husband, Samuel Carper, and her sons, appellants, her only heirs-at-law. William H. Crowl was appointed, and qualified, as administrator of her estate, and deficiency exists in personal assets to pay debts. Afterward, on March 29, 1891, Mary Ann Crowl died, leaving a will and a large amount of personal property.

This bill was filed August 24, 1891, claiming that Mary Ann Crowl having failed to renounce the will of her husband, but taking thereunder, had elected to take a life estate in her own land, and that she, and those claiming under her, were estopped from asserting title thereto; alleging the deed to Mrs. Carper to be void; that the legacy to her failed and lapsed because of her death in the lifetime of her mother; prays partition of the $436\frac{1}{2}$ acres mentioned in clause 8 of the will; that the deed from Mary Ann Crowl to her daughter, Mrs. Carper, to the 180 acres therein included, be canceled, etc.

Answer to the bill was filed by the administrator of the estate of Maria A. Carper, and also by Joseph and John B.

Carper, jointly, as her heirs-at-law, etc., specifically denying all matters therein alleged, inconsistent with the absolute right in fee of Maria A. Carper, under the deed from her mother of February 12, 1875, to the 180 acres of land, and also that there was any failure or lapse of the $3000 legacy. To these several answers replication was filed.

The administrator, aforesaid, also filed a cross-bill, setting up deficiency in the personal estate to pay debts, that the $3000 legacy should be paid him, and made a charge on the homestead,—the 436½ acres. Appellants answered, admitting the allegations of the cross-bill, except that the $3000 legacy should not be charged against the entire 436½ acres, but only upon the part thereof owned by Joseph Crowl at his decease.

The case was referred to a master to take proofs, upon the incoming of which, and final hearing, the court found that upon the death of said Joseph Crowl the fee simple title in and to all the lands mentioned in clause 8 of his will passed to his heirs, naming them, subject to the life estate of his widow, Mary Ann Crowl, which terminated on her death; that the deed from Mary Ann Crowl to her daughter, of February 12, 1875, to the 180 acres, was void; that the $3000 legacy to Maria A. Carper did not lapse, and was a charge on all the land mentioned in clause 8 of the will, and accordingly decreed partition of all the lands embraced in said clause 8, etc.; that the said deed to Maria A. Carper be canceled and set aside, and that the $3000 legacy be paid, etc. From this decree appeal is prosecuted to this court.

Messrs. McGUIRE & SALZENSTEIN, for the appellants:

The equitable doctrine of election originates in inconsistent or alternative gifts, with the intention, either express or implied, that one shall be a substitute for the other. *Brown* v. *Pitney,* 39 Ill. 468; *Gretten.* v. *Howard,* 1 Swanst. 425, note a; Pomeroy's Eq. Jur. sec. 461; 2 Story's Eq. Jur. sec. 1075; 2 Jarman on Wills, 2.

Mrs. Crowl did not take as a beneficiary, but as a purchaser for value. She gave up more than she received. 1 Roper on Legacies, 297; Gross' Stat. chaps. 34, 109, sec. 50; *Blatchford* v. *Newberry*, 99 Ill. 62; *Burridge* v. *Bradyl*, 1 P. Wms. 120; *Blowet* v. *Moret*, 2 Ves. Sr. 420; *Davinhill* v. *Fletcher*, Ambl. 244.

In other cases it is expressly said that such a provision is not a mere bounty, but is supported by a valuable consideration—the relinquishment of the widow's right of dower. *Tickell* v. *Quinn*, 1 Den. 429; *Williamson* v. *Williamson*, 6 Paige, 305; *Sanford* v. *Sanford*, 4 Hun, 753; 2 Williams on Executors, sec. 976; 2 Jarman on Wills, 14, 36; 2 Scribner on Dower, 496.

The doctrine of election depends upon compensation. See 1 Pomeroy's Eq. Jur. sec. 469; *Wilbanks* v. *Wilbanks*, 18 Ill. 17; *Brown* v. *Pitney*, 39 id. 468; *Ward* v. *Ward*, 134 id. 417.

Our second proposition is, even if the doctrine of election could be applied in the case, which we deny, there was no election in fact. The term "election" implies a choice between different things. *Ward* v. *Ward*, 134 Ill. 421.

To constitute an election, there must be a choosing between the two,—the taking of the one and rejection of the other. The taking of both is no election. *Whitridge* v. *Parker*, 20 Md. 70.

Before any presumption of election can arise, it is necessary to show that the party acting or acquiescing was cognizant of his rights. When this is ascertained affirmatively, it may be further necessary to consider whether the party intended an election. 2 Story's Eq. Jur. 1097; *Macnet* v. *Macnet*, 29 N. J. Eq. 54; *King* v. *LaGrange*, 50 Cal. 358; *Beard* v. *Knox*, 5 id. 252; *Watson* v. *Watson*, 128 Mass. 152; *Madden* v. *Railroad Co.* 66 Miss. 258.

The effect of election is not forfeiture, but compensation. 2 Story's Eq. Jur. secs. 10, 85; 1 Pomeroy's Eq. Jur. sec. 5468; 2 Jarman on Wills, 7, 8; *Wilbanks* v. *Wilbanks*, 18 Ill. 17; *Brown* v. *Pitney*, 39 id. 468.

Messrs. CONKLING & GROUT, for the appellees:

The only question is, did the legacy of $3000 vest in Maria A. Crowl at her father's death. This was a pecuniary legacy charged on land, and such legacies are construed as if dispositions of realty. O'Hara on Construction of Wills, chap. 20, sec. 3; 2 Jarman on Wills, (R. & T. ed.) 450.

Her interest was a vested remainder. 4 Kent's Com. 202; *Scofield* v. *Olcott,* 120 Ill. 362; *Bowling* v. *Dobyn,* 5 Dana, 441; *Brown* v. *Lawrence,* 3 Cush. 397; *Peoria* v. *Darst,* 101 Ill. 609; *Nicoll* v. *Scott,* 99 id. 529; *Smith* v. *West,* 103 id. 332; *Haward* v. *Peavey,* 128 id. 430; *Railsback* v. *Lovejoy,* 116 id. 442; Preston on Estates, 70; *Lunt* v. *Lunt,* 108 Ill. 307.

The leading inquiry upon which the question of the vesting or not vesting of a legacy turns, is, whether the gift is immediate, and the time of payment or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving of age or surviving some other person, or the like. *Everitt* v. *Everitt,* 29 N. Y. 39; *Goebel* v. *Wolf,* 113 id. 405.

Where the only gift is found in a direction to give at a future time, futurity being of the substance of the gift, the vesting is suspended; but where the gift is absolute, and the time of payment only is postponed, the gift is not postponed, but vests at once. *Goebel* v. *Wolf, supra; Warner* v. *Durant,* 76 N. Y. 133; *Scofield* v. *Olcott,* 120 Ill. 362.

Legacies charged on land, although not payable until a future date, vest at once, where the postponement is for the convenience of the estate, as, where there is a preceding life interest. In such a case the legacy does not sink for the benefit of the inheritance, but is vested and transmissible, even though the legatee die before the time of payment arrives. O'Hara on Construction of Wills, chap. 20, sec. 3; *Birdsall* v. *Hewzett,* 1 Paige, 32; *Childs* v. *Russell,* 11 Metc. 16.

Messrs. GROSS & BROADWELL, also for the appellees.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The principal question arising upon this record is, whether appellants, as heirs-at-law of Maria A. Carper, *nee* Crowl, are barred of their right to the 180-acre tract of land conveyed by Mary Ann Crowl to her daughter, said Maria A. Carper, February 12, 1875, and derived by the grantor by descent from her mother.

It is insisted that Mary Ann Crowl, widow of the testator, Joseph Crowl, having failed to renounce the benefit of devises to her, in his will, within one year from the probate thereof, in accordance with sections 10 and 11, chapter 41, of the statute entitled "Dower," she is to be presumed to have elected to take under the will. By section 10 it is provided that a devise of land, or any estate therein, to the widow, shall, unless otherwise expressed in the will, bar her dower in the lands of the husband and her share of the personal estate, but giving her a right of election whether to take under the will or under the statute. The succeeding section provides that unless she files a written renunciation within a year from the probate of the will she shall be held to have taken the devise in lieu of dower. It is manifest that the effect of her failure to elect under the statute bars only her dower and distributive share of her husband's estate, as widow, and nothing more. There being no attempt here to assert dower, or a right to a distributive share of the personalty, the statute can have no application. *Carder* v. *Comrs. of Fayette County*, 16 Ohio St. 366.

The bill, and decree of the circuit court, by which the 180 acres of land belonging to Mrs. Crowl is held to have passed under the will of Joseph Crowl, are based upon the doctrine of election, as administered by courts of equity, and it is upon this doctrine that appellees rely for maintaining the decree. The doctrine of election, as sought to be applied, is not a creation of the common law, but was imported into equity

from the civil law, and has since become a familiar part of that branch of our jurisprudence, and its principles and their application are well settled and defined. In the earlier cases it found application usually to devises of land where right of dower was also asserted therein, *(Dillon* v. *Parker,* 1 Swanst. 359, note b,) but has, in modern practice, been extended to cases arising under all kinds of instruments of donation. (2 Story's Eq. Jur. sec. 1080; 1 Pomeroy's Eq. Jur. sec. 470.) This equitable doctrine originated from repugnant positions in respect of inconsistent or alternative gifts, where there was an intention, either express or implied, that one, and not both, should be taken. (1 Swanst. *supra.*) And as at common law the party could not be compelled to make election, and thus render definite and certain whether the donee took the one or the other, or under which he claimed title, courts of equity, for the attainment of justice, and to carry into effect the purpose and intention of the donor, assumed jurisdiction to declare that the donee, not being entitled to retain both, shall elect which he will take, *(Crosby* v. *Murry,* 1 Ves. Jr. 557,) and hence, that where the donee had made an election to accept one of the inconsistent or alternative gifts, to estop him from asserting title to the other. 1 Pomeroy's Eq. Jur. sec. 461; 2 Jarman on Wills, 2; 2 Story's Eq. Jur. 1075, *et seq.;* Bigelow on Estoppel, 578.

He who accepts the bounty of another must do so upon the terms and conditions, express or implied, the donor may impose. The beneficiary can not insist that the provisions in his favor be executed and those to his prejudice disregarded, or, as ordinarily expressed, he can not take under a will and also contrary to its provisions. 2 Jarman on Wills, 1-20; 2 Story's Eq. Jur. 1075-1093; *Brown* v. *Pitney,* 39 Ill. 468; *Woolley* v. *Schrader,* 116 id. 29; *Ditch* v. *Sennott,* 117 id. 362; *Wilbanks* v. *Wilbanks,* 18 id. 17. If, therefore, property of a third person is devised, and in the same will a benefit is given to such third person, which is accepted, with knowledge of all

the facts and of the rights of the donee accepting, the accept-
ance is regarded as a confirmation of the dispositions made by
the will.  So if a testator intending to dispose of his property,
includes in the disposition, property of another person, and
at the same time gives to such other person an interest in the
estate of the testator, such person will not be permitted to
defeat the disposition made by the will and at the same time
take under it.  He is put to his election whether he will re-
tain his own property or take the benefit conferred by the will.
See cases *supra.; Wilson* v. *Townsend,* 2 Ves. Jr. 696; *Wilson*
v. *Mount,* 3 Ves. 191; *Woolen* v. *Tanner,* 5 id. 218; *Noyes* v.
*Mordant,* 2 Vern. 581; *Broome* v. *Monk,* 10 Ves. 609; *Thel-
luson* v. *Woodford,* 13 id. 224; *Dillon* v. *Parker, supra,* and
note.  For, if the donee be permitted to accept the benefit
and at the same time decline the burden, it is to defraud and
defeat the intent and design of the donor.  2 Story's Eq. Jur.
1077; Roper on Legacies, *1567.

It will be found that some of the cases proceed upon the
theory, that as the donee can not take under and against the
will, if he elect to take against the will he forfeits the whole
devise for his benefit; on the contrary, if he accepts the pro-
vision made for him by the will he forfeits his estate devised.
Some of the cases draw the distinction between where there
is an express condition in the instrument of donation, and
where the inconsistency arises by implication; but it may
now be said, that by the more modern English and American
cases, following the rule laid down in the earlier case of *Webster*
v. *Mitford,* 2 Eq. Cas. Abr. 363, the more equitable doctrine
of compensation to the disappointed devisee is established.
2 Jarman on Wills, 7, 8; 2 Story's Eq. Jur. 1085, and note.

In one of the early cases *(Lady of Cavan* v. *Pultney,* 2 Ves.
Jr. 544,) it was said: "An express condition must be per-
formed as framed, and if it is not, that will induce a forfeit-
ure; but the equity of this court (*i. e.,* to compel election,) is
to sequester the devised interest *quousque,* till satisfaction is

made to the disappointed devisee." And the rule seems now established, that when the testator has made disposition of property not his own, and has given a benefit to.the person to whom it belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition. If, on the contrary, he chooses to enforce his proprietary right as against the testator's disposition, equity will sequester the benefit intended for the refractory donee, in order to secure compensation to those whom his election disappoints, and, after making such compensation, restore the surplus, if any, to the donee. (2 Jarman on Wills, 2, 3; 2 Story's Eq. Jur. 1083, 1084; 2 Redfield on Wills, 357; 6 Am. and Eng. Ency. of Law, 255, note 3; *Wilbanks* v. *Wilbanks, supra.*) It would follow, as a necessary sequence from this doctrine, that there could be no compensation awarded where no fund or interest would pass, under the will, to the donee compelled to elect, which could be sequestered to compensate the beneficiaries who are disappointed by the election. As said by Lord Loughborough in *Bristow* v. *Warde,* 2 Ves. 336: "The doctrine of election never can be applied but where, if an election is made contrary to the will, the interest that would pass by the will can be laid hold of to compensate for what is taken away." It is stated in Pomeroy's Eq. Jur., (sec. 469,) that inasmuch as the doctrine of election depends upon the principle of compensation, "it follows, as a necessary consequence, that it will not be applicable in any case unless there is a fund given to the donee who is compelled to elect, from which compensation can be made to the disappointed parties, or which, perhaps, can be transferred as a whole to such parties." See cases in note 1.

It would therefore seem indispensable to the application of the doctrine of election, that there be, first, a plurality of gifts, or two inconsistent or alternative rights or claims in property devised, the choice of one by the devisee being intended to exclude him from the benefit of the other; and

second, in case the property of the devisee is disposed of by the will, and he chooses to assert his right to such property against the will, that there be a fund for his benefit, given by the will, which can be laid hold of to compensate the parties whose right to take under the will is defeated by the election. The application of these principles will relieve the present case of difficulty.

Joseph Crowl died seized of $766\frac{1}{2}$ acres of land. Of this, $256\frac{1}{2}$ acres, and 180 acres owned by his wife in her own right, constituted the family homestead. By specific devises to his children the testator disposed of all his lands except the $256\frac{1}{2}$ acres designated as being part of his homestead. This $256\frac{1}{2}$ acres, together with the 180 acres owned by his wife, is by the eighth clause of his will devised to his wife for life, or during her widowhood. There is, by the will, no devise over of the $436\frac{1}{2}$ acres thus devised to the wife for life, nor is there any residuary clause in the will under which the title might pass. It is apparent, therefore, that there was no attempt by the testator to dispose of the fee of the 180 acres belonging to his wife. Whatever interest appellees acquired in the $256\frac{1}{2}$ acres belonging to Joseph Crowl, necessarily came to them by descent, and not by virtue of any provision of the will. They took, therefore, as heirs-at-law, and not as devisees, in respect of all of said lands included within the homestead. There being no devise over of the fee in the wife's land, it is manifest that the assertion of title by appellants is not inconsistent with any right of appellees under the will. They are not disappointed of any legacy or devise given them by the will, by such assertion of title, and therefore no right to compensation exists in their favor. But if this were not so, and it should be held that the charge created by the ninth clause of the will in favor of the daughter of the testator upon the "homestead" gave appellees a standing in a court of equity, it will be found, upon further consideration, that the doctrine of election had no application.

It is apparent from this record, that under the will the widow was not a beneficiary of any fund out of which compensation could be made. By the will the support of the daughter, Maria A. Crowl, and a legacy of $3000 for her benefit, were made a charge upon the "homestead" devised to the wife for life. By law, the widow was entitled to dower in the whole of the 766½ acres of land of which her husband died seized. It is shown, as we think, that the land of the husband devised to her for life, was not an average one-third of the land owned by the testator, so that it is clear that by the devise of the land she took nothing in excess of her dower. Again, it seems clear, from the evidence, that excluding the widow's award, as must be done, she received under the will less than one-third of the personal estate after the payment of debts, which amount she would have been entitled to under the statute. (Gross' Stat. 1869, chap. 34.) The provision made by the will was therefore in lieu of, and not in excess of, her rights in her husband's estate as widow, and she took the same, not as a beneficiary under the will, but as a purchaser. In *Blatchford* v. *Newberry*, 99 Ill. 62, we said: "A provision by will in lieu of dower is, in fact and legal effect, a mere offer by the testator to purchase out the dower interest for the benefit of his estate." In *Isenhart* v. *Brown*, 1 Edw. Ch. 413, the court, in speaking of a devise in lieu of dower, said: "It is the price put by the testator himself upon the right, and which she is at liberty to accept. Her relinquishment of dower forms a valuable consideration for the testamentary gifts. In this point of view she becomes a purchaser of the property left to her by the will. So, on the other hand, the husband offers a price for his wife's legal right of dower which he proposes to extinguish, and if she agrees to the terms, she relinquishes it and is entitled to the price. It is therefore a matter of contract or convention between them, and what she thus becomes entitled to receive is not by way of bounty, like other general bequests, but as purchase money for what she

relinquishes." See 2 Scribner on Dower, 469; *Fitts et ux.* v. *Cook*, 5 Cush. 569; *Carder* v. *Comrs. of Fayette County, supra.*

We have already seen that a prerequisite to the application of the doctrine of election is, that a benefit should be conferred upon the devisee which can be laid hold of by a court of equity to compensate the parties from whom the devise is taken by the election. Had the widow renounced the will, it seems clear she would have taken more out of her husband's estate than is devised to her by the will, and taking, therefore, as purchaser, she is not a beneficiary under the will, within the meaning of the rule. Moreover, if it be conceded that Mrs. Crowl was put to her election, it seems clear that the facts relied upon as showing that she made an election to take under the will are ineffectual. The text writers and decided cases lay down the rule, with practical uniformity, that where one has an election between several inconsistent courses of action, he will be confined to that he first adopts, and any decisive act, done with knowledge of his rights and of all the facts, determines his election, and estops him from asserting to the contrary. (Bigelow on Estoppel, 578.) But it is requisite, in order to bind a party by election, that it be made with full knowledge of all the facts, and if made by mistake or under misapprehension, or in ignorance of the facts or the rights of the party, it will not be conclusive. 2 Story's Eq. Jur. 1097; 2 Jarman on Wills, 40, *et seq.;* 2 Redfield on Wills, 362, and note.

In *Pratt* v. *Douglas*, 38 N. J. Eq. 516, it appearing that the widow had acted in good faith and upon the advice of counsel, it was said: "When a party is bound to elect between two inconsistent rights, and the contention is that an election has been made by conduct, it must be shown that the party acted with the knowledge of his rights,—that knowing he could not hold the property which he was otherwise entitled to, and that given him by the will, he acted with an intention to relinquish the former and accept the latter." And it was held,

the widow having acted upon the advice of counsel, that the rights were not inconsistent,—there was no election,—citing *Williams* v. *Thornburg*, L. R. (10 Ch. App.) 329; *Dillon* v. *Parker*, 1 Swanst. 359; *Bradbury* v. *Clark*, 2 McN. & G. 298; *Spread* v. *Morgan*, 11 H. L. Cas. 588. Where the rights of third persons have not intervened, an election made in ignorance, or under misapprehension of the effect of the act or the extent of the party's rights, is not binding, and may be revoked. Pomeroy's Eq. Jur. sec. 572; *McNatt* v. *McNatt*, 2 Stew. Eq. 54; *Dillon* v. *Parker, supra.*

The last case cited is instructive upon the point under consideration. There the son had devised property of the father to sisters, and had also devised an estate belonging to himself to the father. The father entered into the estate devised to him, and continued in the possession of the property devised to the sisters. It was insisted, that having taken the property devised to him, there was an election to take under the will, and that he was estopped from asserting title to the estate devised to the sisters. It was held, upon the principle before announced, that it must be shown that he was apprised of the necessity of electing; that knowing he could not hold both the property to which he was previously entitled and that which was given to him by his son, he voluntarily abandoned the one for the other; that there could be no election without an intention to make it, upon full knowledge of the effect of the acts alleged to constitute the election. See *Wake* v. *Wake*, 1 Ves. Jr. 335; *Reynard* v. *Spence*, 4 Beav. 103; *Edwards* v. *Morgan*, 3 Price, 728; *Winton* v. *Clifton*, 21 Beav. 447; *Sopwith* v. *Maughan*, 30 id. 325; *King* v. *LaGrange*, 50 Cal. 328; *Beard* v. *Knox*, 5 id. 252; *Evans' Appeal*, 51 Conn. 435; *Watson* v. *Watson*, 128 Mass. 152; *Estate of Woodburn*, 138 Pa. St. 606; *Cowdrey* v. *Hitchcock*, 103 Ill. 262.

It affirmatively appears, that shortly after the death of her husband Mrs. Crowl sought and obtained advice from reputable attorneys as to the effect that taking under the will would

31—149 ILL.

have upon her title and interest in the 180-acre tract of land, and was advised, in effect, that her failure to renounce the will would not in anywise affect her title thereto, and that she acted upon such advice.    She continued in occupancy of the tracts of land designated as the homestead, the residence being upon her land, and the barns, etc., being upon land of which her husband was seized, asserting title and ownership to the 180 acres inherited by her from her mother, until February 12, 1875, when she conveyed the same, by warranty deed, to her daughter, Maria A. Crowl, reserving to herself a life estate therein.    Conceding, therefore, that the case is one calling upon her to elect, the facts shown effectually rebut the presumption of any intention upon her part to abandon her title and accept in lieu of it the provisions made by the will. Indeed, it is as clear as proof can make it, that in continuing to occupy the homestead and accepting the devise of personal property she did so with the express understanding, on her part, that she was not thereby electing to abandon title to her land, and it seems clear that for the benefit of the estate, and to its advantage, she took the provisions of the will in discharge of her rights, as widow, in her husband's estate, only.    We are of opinion, therefore, that in no view of the case that can be taken was the title of Mrs. Crowl affected by her acceptance of the provisions made for her in the will; that the title remained in her, to all intents and purposes, as if she had formally renounced its provisions for her benefit, and that by her deed title passed to Maria A. Crowl, and upon her death, intestate, descended to her heirs-at-law.

The remaining question to be considered arises under the ninth clause of the will, by which there is given to Maria A. Crowl, daughter of the testator, at the death or marriage of his widow, "out of said homestead," the sum of $3000, and the principal question discussed is, whether this legacy was vested or contingent.    Maria A. Carper, (*nee* Crowl,) the legatee, died intestate November 20, 1884, leaving appellants her

only heirs-at-law. Mary Ann Crowl, the widow, died without having again married, March 29, 1891. It therefore appears that the legatee died before the happening of the contingency upon which the legacy was payable, and, it is insisted, the legacy therefore lapsed. The rule formerly seems to have been, in regard to sums of money payable out of land *in futuro,* that whether charged upon the real estate primarily, or in aid of the personalty, they lapsed if the legatee died before the time of payment. (2 Blackstone's Com. 513; 2 Vern. 439; 3 Atk. 112; 1 id. 482.) "But," says Mr. Jarman, (vol. 2, 450,) "this doctrine has undergone some modification, and the established distinction now is, that if the payment be postponed with reference to the circumstances of the devisee of the money, as, in case of legacy to A to be paid at his age of twenty-one years, the charge fails, as formerly, unless the devisee lives to the time of payment. But, on the other hand, if the postponement of payment appear to have reference to the situation or convenience of the estate, as, if land be devised to A for life, remainder to B in fee, charged with a legacy to C, payable at the death of A, the legacy will vest instanter, and, consequently, if C die before the day of payment, his representatives will be entitled." (See, also, 2 Redfield on Wills, 251; *Marsh* v. *Wheeler,* 2 Edw. Ch. 163.) Pecuniary legacies charged on land are, so far as they are made a charge thereon, to be considered as dispositions *pro tanto* of the realty. O'Hara on Const. of Wills, chap. 20, sec. 3; 2 Jarman on Wills, 450; *Scofield* v. *Olcott,* 120 Ill. 362; Theobald on Law of Wills, 412, *et seq.;* · *Green* v. *Hewitt,* 97 Ill. 113.

It will be unnecessary to discuss at length the doctrine of contingent and vested remainders. The rule is well established that a remainder will not be held to be contingent, unless, from the language of the instrument, that result was manifestly intended, otherwise the estate will be regarded as vested. The principles applicable to the vesting of devises of real estate apply, generally, to gifts of personalty. Where,

however, there is no original gift of personalty, but only a direction to pay at a future time, the vesting will, ordinarily, be postponed until the time of payment. (1 Jarman on Wills, 833.) But if it appear that the time relates only to the payment, and is not annexed to the substance of the gift, the legacy is at once vested. (Idem.) In the former case,—that is, where there is no other gift than the mere direction to pay *in futuro,*—the doctrine already announced applies, and if it appear that the payment or distribution is postponed for the convenience of the estate, the legacy becomes vested at once, and is not postponed until the time of payment, *(Scofield* v. *Olcott, supra; Chapin* v. *Crow,* 147 Ill. 219, and cases cited;) the rule being, that if the payment or distribution is postponed because of the position of the fund or estate out of which it is to be paid, the legacy vests at once, and the time of payment, only, is postponed; on the other hand, if the postponement be for reasons personal to the legatee or devisee, the remainder is contingent.

In the provision made for the daughter, Maria A., the testator devises and orders that she shall have her support "out of the avails of said homestead," during the lifetime or widowhood of the testator's wife, and at her death or marriage "have out of said homestead" $3000. There is here a devise of $3000 to the daughter, to be paid out of the homestead upon the event of the marriage or death of the testator's widow. While the payment might be accelerated by the marriage of the widow, the event upon which the payment was ultimately to be made was certain. There was, therefore, no contingency in respect of the time when the legacy should vest in possession, and the postponement related only to the time of payment, and was in no way annexed to the substance of the gift. It would therefore, under the rules announced, seem clear that the legacy vested *in presenti* in the daughter. The same result will follow if the gift is held to lie in the mere direction to pay the legacy out of the homestead, upon the death

of the widow. The case would fall within the rule stated, that where the postponement is for the convenience of the estate, as, to let in a prior gift for life, the legacy is vested, and the time of payment, only, is postponed. By the eighth clause of the will the estate upon which the legacy is charged was devised to the wife of the testator for life or widowhood, and by the ninth clause the avails of the same estate are charged with the support of the daughter during the same period. The manifest purpose of postponing payment of the legacy was to preserve the estate intact to the life tenant, and for the support of the daughter. The legacy was therefore vested in interest upon the death of the testator, and upon the decease of the legatee went to her personal representatives, postponed until the happening of the event upon which it was payable.

It clearly appears to have been the intention of the testator that the legacy should be charged upon the real estate designated as the homestead, and a fund thereby created out of which it should be paid, and it follows, that unless the fund thus created has failed, it is alone liable for the payment thereof. (1 Roper on Legacies, 198, 670, *et seq.;* 3 Pomeroy's Eq. Jur. sec. 1133, note 1.) It is unimportant, in the payment of a demonstrative legacy, as is here created, that a part of the fund out of which it is payable has failed, if sufficient remains to satisfy the legacy, for by the will it is charged against all and every portion of the fund. Here, the fund as to the 180-acre tract belonging to the wife, if it be held to have been the intention of the testator to include the same therein, has failed. But this by no means defeats the right to have satisfaction of the legacy out of the residue of the land out of which it was to be raised. Nor does the fact that the title to the land is in the legatee, under the circumstances of this case, merge or abate any portion of the devise. Where the person in whose favor the charge exists comes into the inheritance upon which the legacy is charged, there is a merger, either total or *pro tanto,* of the legacy. 2 Pomeroy's Eq. Jur.

sec. 768, *et seq.; Chester* v. *Willes,* Ambler, 246; *Forbes* v. *Moffatt,* 18 Ves. 384; *Seys* v. *Price,* 9 Mod. 120; Preston on the Law of Merger, *567. But that principle can have no application here, for the reason that the estate not belonging to the testator was in nowise subject to the charge by him. It would not for a moment be contended, if the conveyance by Mrs. Crowl had been to a stranger, that the assertion of title in him to the 180-acre tract would in anywise affect the legacy of $3000 to the daughter. Here the daughter, Maria A., took the title as purchaser from her mother, and holds it independently of any right acquired by, through or under the testator.

The decree of the court below will accordingly be reversed, and the cause remanded to that court for further proceedings not inconsistent with this opinion.

<div align="right">

*Decree reversed.*