## Bridget Powers, Administratrix of William Powers, v. John Egelhoff et al.

1. WILLS — *Vested and Contingent Legacies.*—A legacy, originally payable out of or chargeable upon real estate, will not vest until the whole condition upon which it is given, is complied with.

2. LEGACIES— *With Reference to the Circumstances of the Legatee and to the Condition of the Estate.*—If the payment of a legacy, charged

upon land, is postponed with reference to the circumstances of the legatee, as in case of a legacy to A, to be paid at his arrival at the age of twenty-one, the charge fails unless A lives until the time of payment. But if the payment is postponed with reference to the situation or convenience of the estate, as if land is devised to A for life, with remainder to B, in fee, charged with a legacy to C, payable at the death of A, the legacy will vest instanter, and consequently if C die before the day of payment, his representatives will be entitled.

3. SAME—*Payable at a Future Day.*—A legacy made a charge upon lands, payable at a future day, does not vest till the time of payment; and if the legatee die in the meantime the legacy will lapse, and the estate, if devised, will go to the devisee freed from the charge of the legacy.

Memorandum.—In Equity. In the Circuit Court of Jersey County; the Hon. GEORGE W. HERDMAN, Judge, presiding. Bill to subject lands to the payment of a legacy; dismissed on demurrer; appeal by complainant. Heard in this court at the November term, 1894, and affirmed. Opinion filed February 11, 1895.

APPELLANT'S BRIEF, THOMAS F. FERNS, ATTORNEY.

A legacy, payable to A at the age of twenty-five years, goes to his administrator if he dies before he attains that age. Ruffin v. Farmer, 72 Ill. 615; Kerlin's Lessee v. Bull, 1 Dall. (U. S.) 175; Hodgson v. Gemuiel, 5 Rawle (Pa.) 99; Newberry v. Hinnman, 49 Conn. 130; Furness v. Fox, 1 Cush. (Mass.) 134; Nelson v. Pomeroy, 29 Atl. Rep. 534; 64 Conn. 257; Shattuck v. Stedman, 2 Pick. (Mass.) 468.

APPELLEES' BRIEF, CHAPMAN & VAUGHN, ATTORNEYS.

Appellees contended that the legacy lapsed on the death of the legatee. 1 Roper on Legacies, Ch. 11, Sec. 1, page 432; Pawlett v. Pawlett, 1 Vern. 321; Smith v. Smith, 2 Vern. 92; Yates v. Phettiplace, 2 Vern. 416; Jennings v. Looks, 2 Wms. 276; Chandas v. Talbot, 2 Wms. 276; Prowse v. Abingdon, 2 Atk. 482.

The rule is thus stated by Jarman (Bigelow's Ed., star p. 791; Am. Ed. with Randolph & Talcott's Notes, Vol. 2, p. 450, being Ch. 25, Sec. 5): " A pecuniary legacy, whether charged on land or not, given to a person *in esse* simply, *i. e.*, without any postponement of payment, is of course, vested immediately on the testator's decease. In

regard to sums payable out of land *in futuro*, the old rule
was, that, whether charged on the real estate primarily, or in
aid of personalty they could not be raised out of the land
if the devisee died before the time of payment; but this
doctrine has undergone some modification, and the estab-
lished distinction now is, that if the payment be postponed
with reference to the circumstances of the devise of the
money, as in the case of a legacy to ' A,' to be paid to him
at his age of twenty-one years, the charge fails as formerly,
unless the devisee lives to the time of payment; and that,
too, though interest in the meantime be given for main-
tenance.   But, on the other hand, if the postponement of
payment have reference to the situation or convenience
of the estate, as, if the land be devised to A for life, re-
mainder to B in fee, charged with a legacy to C payable at
the death of A, the legacy will vest instanter; and con-
sequently if C die before the day of payment his represen-
tatives will be entitled; the raising of the money being evi-
dently deferred until the decease of A in order that he may
in the meantime enjoy the land free from the burden."
2 Redfield on Wills, Ch. 1, Sec. 15, Part 4, star p. 208;
Theobald on Wills (3d Ed. 1885), 380, Ch. 33; 2 Woer-
ner's Am. Law of Adm., 924; Wigram on Wills, 259, 260;
McCartney v. Osburn et al., 118 Ill. 403; Williams v. Will-
iams, 6 L. R., Ch. 782; Festing v. Allen, 5 Hare 572; Vow-
dry v. Geddes, 1 R. & M. 203; Bull v. Pritchard, 5 Hare
572; Taylor v. Gould, 10 Barb. 388; Burrows v. Sherm, 22
How. Pr. 169; Snow v. Snow, 49 Me. 159; Moore v. Smith,
9 Watts 403; Illinois Land and Loan Co. v. Bonner, 75 Ill.
315; Collier v. Slaughter, 20 Ala. 263; Butler v. Butler, 3
Barb. Ch. 304; Radcliff v. Bagshaw, 6 Tenn. 512; 2 Will-
iams on Executors, 32 Am. Ed. 1049; Scofield et al. v.
Olcott et al., 120 Ill. 362.

MR. PRESIDING JUSTICE WALL DELIVERED THE OPINION OF
THE COURT.

This was a bill in chancery filed by the appellant to sub-
ject certain lands to the payment of three thousand dollars

as a charge thereon, pursuant to the will of Michael Powers, deceased. A demurrer to the bill was sustained, and a decree was entered dismissing the bill, from which the present appeal is prosecuted.

The testator died May 23, 1880, leaving him surviving his widow, the said Bridget Powers, and his three sons, John, James and William, the last named being then not quite fourteen years of age, and being the youngest of the family. The will provided as follows:

"First. I desire and direct that all my just debts be fully paid.

Second. It is my will and my desire that my wife, Bridget Powers, have full control and possession of all the real estate I may die possessed of, together with all my personal property, until my youngest child shall become twenty-one years old, and that she continue the business of farming and make a home for my children, and pay off a certain mortgage owing by me to John A. Shephard for the sum of four thousand dollars, and I hereby give her the power to sell and dispose of my personal property as she may see fit, in order to continue the business of farming.

Third. When my youngest child, William Powers, shall become twenty-one years old, it is my will and direction that my son, John Powers, shall have, in fee simple, the following described real estate, to wit: The southwest quarter of the southeast quarter and the east half of the southeast quarter of section No. twenty-one (21), and the west half of the southwest quarter of section No. twenty-two (22), and the undivided one-half of the southeast quarter of the northeast quarter, section No. thirty-three (33), all of the said land being in township No. eight (8) north, range No. twelve (12) west of the principal meridian in Jersey county, and State of Illinois.

Fourth. It is my will and direction when my son, William Powers, shall become twenty-one years old, that my wife, Bridget Powers, shall have the following described real estate, to wit: The east half of the northwest quarter, and the west half of the northeast quarter of section No.

twenty-eight (28), and the undivided one-half of the southeast quarter of the northeast quarter of section No. thirty-three (33), all of the said land being in township No. eight (8) north, range No. twelve (12) west of the third principal meridian, to have and to hold for and during the term of her natural life, and at her death the said land left to her for her life I give and bequeath to my son, James Powers, to have and to hold to him and his heirs forever.

Fifth.  It is my will and direction when my son, William Powers, shall become twenty-five (25) years old that my son, John Powers, shall pay him the sum of three thousand ($3,000) dollars, which I hereby make a charge against the land herein bequeathed him until the same is paid, the said sum not to draw any interest until my son, William Powers, becomes twenty-five (25) years old.

Sixth.  It is my further will and direction that when my son, William Powers, becomes twenty-five years old, that my wife, Bridget Powers, and my son, James Powers, pay to him the sum of three thousand ($3,000) dollars, which I hereby make a charge against the land herein bequeathed to them, the said sum not to draw any interest until my son, William Powers, becomes twenty-five years old.

Seventh.  Should my son, William Powers, die before reaching the age of twenty-one years, it is my will and direction that my real estate descend at once as herein devised.

Eighth.  It is my will and direction that when my son, William Powers, becomes twenty-one years old, that all the personal property then in the possession of my wife, Bridget Powers, be equally divided, share and share alike, between my sons, John Powers and James Powers, and my wife, Bridget Powers, and should he die before reaching the age of twenty-one years, the said personal property to be divided at once.

Ninth.  It is my will and direction that my father, James Powers, have a home with my wife and children at the place I now reside during his life, and that they furnish him with all necessary comforts.

Tenth.   Lastly, I do hereby nominate and appoint my wife, Bridget Powers, to be the executrix of this my last will and testament, hereby releasing her from giving any security on her bond as such executrix."

The bill alleged that the said Bridget Powers administered upon the estate pursuant to the will which was duly proved and recorded, and was finally discharged from further duty and liability in that behalf; that the said William Powers died intestate on the 14th of February, 1888, being then less than twenty-two years of age, leaving the said Bridget, his mother, and the said John and James, his brothers, his only heirs, and leaving as his only property the legacy of three thousand dollars provided for in the fifth clause of the will, no reference being made to that provided for in the sixth clause, and leaving valid debts unpaid; that the said Bridget was appointed his administrator; that the said John had, when by her requested, refused to pay the said sum so charged upon the land devised to him, and that he had conveyed said land to John Egelhoff, and that the said John was wholly insolvent.   The prayer was that the said sum of three thousand dollars might be declared a lien upon the land devised to John, and that if not paid within a day to be fixed, etc., the land might be sold, etc.

The bill was filed July 31, 1894.   The said William would have attained the age of twenty-five years on the 1st of July, 1891.

The question is whether the legacy to him was vested or contingent; whether, dying before he reached the age of twenty-five years, it passed to his personal representatives or whether it lapsed.

In Roper on Legacies, Vol. 1, p. 432, the rule is stated that a legacy originally payable out of or chargeable upon real estate will not vest until the whole condition upon which such legacy is given is complied with, as for example the attainment by the legatee of a designated age, though when the gift is to be paid or distributed *in futuro*, if the payment or distribution appears to be postponed merely for the convenience or ease of the property and not for reasons

personal to the legatee, *e. g.*, his age, the gift will vest *in presenti*.

Referring to the rule that a legacy charged on land will lapse upon the death of the legatee before the time fixed for payment, Jarman on Wills, 6th Ed., Vol. 1, page 806, remarks: " But this doctrine has undergone some modification, and the established distinction now is that if the payment be postponed with reference to the circumstances of the devisee of the money, as in case of legacy to A to be paid at his age of twenty-one years, the charge fails as formerly unless the devisee lives to the time of payment. But on the other hand if the postponement of payment appear to have reference to the situation or convenience of the estate, as if land be devised to A for life, remainder to B in fee charged with a legacy to C, payable at the death of A, the legacy will vest instanter, and consequently if C die before the day of payment his representatives will be entitled." The rule as thus modified has been approvingly referred to in Scofield v. Olcott, 120 Ill. 332, Carper v. Crowl, 149 Ill. 465, and in other cases in the Supreme Court of Illinois.

In Redfield on Wills, 2d Ed., Vol. 2, p. 208, it is said : " It seems entirely well settled that a mere charge on land, payable at a future day, does not vest till the time of payment, and if the legatee in the meantime decease, the legacy will lapse, and the estate, if devised, will go to the devisee freed from the charge. In other words, the lapse will inure for the benefit of the devisee."

A careful reading of all the provisions of the will has convinced us that the testator designed that the charge upon this land should be paid only upon the event of William attaining the age of twenty-five years.

The postponement was no doubt for reasons personal to the legatee and not for the ease or convenience of the estate.

We are therefore of opinion that the decree of the Circuit Court was correct, and it will be affirmed.