## John F. Devine, Administrator, Plaintiff in Error, v. Mary Steffen et al., Defendants in Error.

### Gen. No. 19,726.

1. WILLS, § 493*—*rules as to lapsing of legacy where legatee dies before testatrix.* Where the payment of a legacy charged upon land is by the terms of a will postponed until the arrival of the legatee at a certain age, or to some other fixed time in the future, the legacy lapses if the legatee dies before the time arrives, and the postponement of the payment was made on account of the circumstances and for the good of the legatee. If, however, the postponement was made on account of the circumstances of the estate or for the benefit or aggrandizement of the estate, the legacy does not lapse but vests in and passes to the personal representative of the legatee in case of his death before payment. But these rules are not conclusive as against evidence of the intention of the testator.

2. WILLS, § 493*—*when words in will do not prevent lapsing of legacy.* Where a will charged a legacy upon land to be paid to the legatee, his heirs and assigns when he is twenty-one years of age, and the legatee died before the testatrix, *held* that the use of the words "his heirs and assigns" did not show that the testatrix intended the legacy to go to the heirs of the legatee in view of other provisions in the will and the circumstances of the family at the time the will was made.

Error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed October 13, 1914.

J. JULIUS NEIGER and BLUM & BLUM, for plaintiff in error.

CHARLES WERNO, for defendant in error Mary Steffen.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The complainant in this case below is the plaintiff in error in this court. His bill was dismissed for want of equity by the Superior Court of Cook county. His

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

assignments of error, in effect, merely call in question the rightfulness of the decision as a matter of law.

The bill of complaint with its exhibit alleges that the complainant is the duly appointed administrator of the estate of Michael Huber, deceased; that one Maria Anna Huber died March 1, 1895, leaving a last will and testament, of which the material parts are as follows:

"SECOND. I give and bequeath to Michael Huber, the son of my deceased son, Michael Huber, the sum of $1,000, which shall be paid to him without interest when he is 21 years old, by and out of the share hereinafter devised and given to my son Thomas Huber, as hereinafter further stated and set forth.

"THIRD. I give and bequeath to Thomas Huber, the son of my deceased son Michael Huber, the sum of $1,000, which shall be paid to him without interest when he is 21 years of age, by and out of the share hereinafter given and devised to my daughter, Maria A. Rick, nee Huber, as hereinafter stated and set forth.

"FOURTH. I give, devise and bequeath to my son, Thomas Huber, the following described real estate, to-wit" (describing an improved lot in Chicago) "and to his heirs and assigns forever, but upon the express condition that said Thomas Huber or his heirs and assigns shall pay the sum of $1,000 to Michael Huber, his heirs and assigns, being the bequest hereinbefore made to said Michael Huber in No. 2 of this will.

"FIFTH. I give, devise and bequeath to my daughter, Maria A. Rick, nee Huber, the following described real estate, to-wit" (describing another improved lot in Chicago). "And this bequest is made upon the express condition that said Maria A. Rick shall pay the full amount of the incumbrance upon" (describing both lots and the incumbrance); "and upon the further condition that said Maria A. Rick shall pay the sum of $1,000 to my grandson, Thomas Huber, his heirs and assigns, being the bequest hereinbefore made to said Thomas Huber in the third clause of this will."

That Michael Huber died March 8, 1898, being then only nineteen years old; that he left him surviving his mother, Wilhelmina Roth, his half brother, William P.

Roth, and his half sister, Martha M. Roth, his only heirs at law; that Thomas Huber and his wife, Mary T. Huber, after the death of Maria Anna Huber, took possession of the lot devised to Thomas Huber and have ever since lived on the same; that by virtue of the will of Maria Anna Huber the sum of one thousand dollars became upon her death a charge and lien on said real estate devised to Thomas Huber and was payable to Michael Huber upon his arriving at the age of twenty-one years, *and by reason of his death became due to his estate in the month of March, 1900, at which time he would have been twenty-one years of age had he lived so long;* that said sum of one thousand dollars has never been paid and is due with interest from April 1, 1900, and that the complainant as administrator is entitled to receive it and to have the premises bequeathed to Thomas Huber sold under the orders of the court for the purpose of paying the same; that Mary Steffen, Mary T. Huber and Thomas Huber claim to have an interest in the property. Therefore the bill prays for an answer and that an account may be taken and that Thomas Huber, or some of the defendants, may be decreed to pay to the complainant the sum that shall appear to be due on taking the account; that in default of payment the premises may be sold as the court may direct to satisfy the debt and costs, and in case of a failure to redeem, the defendants shall be foreclosed from any equity of redemption.

The Hubers answered, denying that the complainant was entitled to relief, and calling for strict proof of the allegations of the bill. Mary Steffen did the same, but added to the allegations a statement that she was now the owner in fee simple of the lot so devised to Thomas Huber by Maria Anna Huber, having acquired the title thereto by a master's deed from a master in chancery of the Circuit Court of Cook county in pursuance of a decree of said court.

By a certificate of evidence it appears that the va-

rious allegations of fact in the bill and answer were proved, and that at the time of the death of Maria Anna Huber she left her surviving as her only heirs at law and next of kin Thomas Huber, her son, Mary A. Schumacher, her daughter, and Michael Huber and Thomas Huber, her grandchildren, who were the children of her son, Michael Huber, who predeceased her; that on October 22, 1902, while Thomas Huber and Mary T. Huber, his wife, were occupying the premises devised to Thomas (Lot 11 in Hapgood & Barry's Subdivision of the N. ½ of Block 24, of the Canal Trustees' Subdivision in 33-40-14), they executed to one Charles Werno as trustee a trust deed mortgage on said premises to secure the payment of three thousand dollars to Mary Steffen, which trust deed mortgage was foreclosed in the Circuit Court of Cook county thereafter, a decree of sale having been entered on June 15, 1908, and that since October 18, 1909, the said Thomas and Mary T. Huber have been occupying a portion of said premises only, and that portion as the tenants of Mary Steffen, the said Mary Steffen having received a master's deed of the premises on said last mentioned date; that the estate of Maria Anna Huber was declared settled by the Probate Court of Cook county on the 27th day of May, 1901, and the executor discharged.

The only question for us to consider is whether the legacy of one thousand dollars made by Maria Anna Huber to Michael Huber lapsed by reason of his death before he arrived at the age of twenty-one years, or was so vested in him (although its payment was postponed) that the right to it when he died passed to his personal representative, to be enforced when Michael would have become twenty-one.

The doctrine in such cases does not seem to us an obscure one. It is this: If the payment of a legacy charged upon land is by the terms of a will postponed until the arrival of the legatee at a certain age, or to some other fixed time in the future, the legacy lapses if

the legatee dies before the time arrives, if the post-ponement of the payment has been made on account of the circumstances and for the supposed good of the legatee. If, however, the postponement has been made on account of the circumstances of the estate or for the benefit or aggrandizement of the estate, the legacy does not lapse but vests in and passes to the personal representative in case of death before payment. But both these rules must and do give way to evidence of the intention of the testator in either direction. The intention, if it can be legally ascertained, is therefore the ultimate test.

For this general statement of the doctrine applicable to this case we may cite: *Carper v. Crowl*, 149 Ill. 465-483; *King v. Withers*, Cases Tempore Talbot 116, and 2 Equity Cases Abridged, 656. Also the same case with the notes and cases cited therein in 5 Gray's Cases on Real Property, p. 266, especially *Evans v. Scott*, 1 House of Lords Cases 43-57; *McCartney v. Osburn*, 118 Ill. 403; Underhill on Wills, sec. 328; Theobald on Wills (7th Ed.) ch. 44, p. 579; *Parker v. Hodgson*, 1 Drewry & Small, 568; 1 Jarman on Wills, ch. 25, sec. 5, star page 834; *Cholmondelay v. Meyrick*, 1 Eden 77, note; *Cassem v. Kennedy*, 147 Ill. 660; *Powers v. Egelhoff*, 56 Ill. App. 606.

The postponement in this case was evidently in consideration of the circumstances of the legatee, not of the estate, and it is plain, therefore, we think, that the legacy lapsed unless there is sufficient evidence that the intention of the testator was to the contrary. Upon our decision whether there is such sufficient evidence must depend our disposition of the cause. We do not think there is. The plaintiff in error relies strongly on the use of the words "his heirs and assigns" after the name of Michael Huber in the fourth paragraph of the will. Incidentally it may be noted that counsel for plaintiff in error in their argument fall into a mistake, which counsel for defendant in error does not correct but apparently accedes to, in saying that clause five of

the will "does not employ the language that clause four does, and while it requires the payment to the grandson" (Thomas Huber) "it does not require payment to his heirs and assigns." The provision is identical in the fourth and fifth clauses as to the two grandsons as shown in the transcript of the record before us.

But it must be admitted that the use of the words indicated lends some plausibility to the argument that the testatrix intended the right to the legacy to vest on her death although the payment was postponed. But reflection and authority combine not only to negative its conclusiveness, but also to deny it any considerable persuasiveness. The meaning of these words, we think, so far as they could be given any meaning, was that when the time arrived for the payment of the legacy it was to be paid to the legatee unconditionally as an absolute gift and not for life or in trust. But they really were practically without meaning. It is said in Underhill on Wills, p. 445, sec. 332:

"It is very well settled that the mere addition of words of succession or representation to the name of the legatee, * * * is never sufficient alone to save the legacy and to prevent the operation of the rule of lapse. * * * The presumption that the testator did not intend to prevent a lapse is strengthened by the addition of the word 'assigns,' as in the case of a gift to A and his heirs and assigns."

We think, on the other hand, that the circumstances of the family at the time the will was made in 1893, and the fact that the natural link between the grandmother and grandson had been broken by the death of the latter's father, militates against the theory that she intended the grandson's heirs to take in case of his death before he was twenty-one. The heir to the larger part of his estate would be even then one not of kin to the testator; she might marry again, as she did, and before Michael was twenty-one, have other children who would also be heirs of Michael but not of kin to the testator.

And the fact that it was expressly provided that when the legacy was to be paid at the legatee's twenty-first year, it was to be without interest, looks in the same direction.

These considerations also outweigh in our mind such a merely technical consideration as that the bequest is made to the legatee not in terms "when he is 21 years old," but "which shall be paid to him when he is 21 years old," which difference Williams in his work on Executors, as quoted (but not necessarily approvingly, as counsel argue) by our Supreme Court in *Kingman v. Harmon,* 131 Ill. 176, thinks significant.

We think the chancellor below was right in his decree, and it is affirmed.

*Affirmed.*