WILHELMINA HAACK, Appellant, *v.* JOHN WEICKEN, et al., as Executors, etc., et al., Respondents.

H. died seized of certain real estate and leaving four children, of whom plaintiff is one. They entered into an agreement for partitioning the land among themselves, by the terms of which plaintiff was to take her interest in a lot valued at $20,000. This was to be conveyed by the owners to J., one of their number, who was to convey the same to plaintiff and her husband as tenants in common, upon payment by the husband of $10,000 to a sister of the plaintiff. J. received a conveyance from his co-tenants in common, and directed the scrivener to draw a deed, from him to plaintiff and husband, as agreed, but the scrivener, by the direction of the husband, made out the deed to him alone; this was executed by J. without any knowledge of the variance from his instructions and with the intention on his part of carrying out the agreement; the change was not discovered by him or plaintiff until after the death of the husband, and she received no consideration for the transfer of her interest to him. In an action to have said deed reformed by inserting plaintiff's name as a grantee, *held*, that J., in taking title for purposes of the agreement, did so as trustee, and had no authority to convey, otherwise than as stipulated; that as to him and plaintiff, there was a mutual mistake of fact, which entitled her to the relief sought, as the portion of the agreement requiring him to convey to the husband an undivided half was independent of that requiring the conveyance to plaintiff, and gave the brother no power, right or authority to change, alter, or modify the agreement to convey to her; that plain-

tiff's husband occupying that confidential relation to her, and, having obtained the conveyance as he did, the burden was cast upon him and his successors in title, of showing that the conveyance was free from fraud or mistake.

Also, *held,* that plaintiff's rights would not be affected if it appeared that her husband acted for her as her agent; in which case, having procured the conveyance of her interest to himself without her knowledge or consent, she was entitled to have it adjudged that he took title in trust for her. (1 R. S. 728, §§ 51, 52).

Plaintiff's husband left a will by which he devised to her certain real estate which was worth about $3,000 above incumbrances, and bequeathed her $10,000. in cash, in lieu of dower. After various legacies he gave his residuary estate to beneficiaries named. The personal estate was more than enough to pay the debts and legacies. Plaintiff accepted the provision made for her in the will; the court found that this acceptance amounted to an election under the will and precluded her from setting up any legal or equitable claim of her own to the real estate in suit. *Held,* error; that the residuary clause only covered property which belonged to the testator, and no intent could be inferred to devise the real estate which he knew equitably belonged to his wife; and so the provisions of the will were not inconsistent with plaintiff's claim.

*Haack* v. *Weicken* (42 Hun, 486), reversed.

(Argued October 22, 1889 ; decided December 17, 1889.)

APPEAL from judgment of the General Term of the Supreme Court of the first judicial department, entered upon an order made December 31, 1886, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts are sufficiently stated in the opinion.

*Matthew Hale* for appelant. The trial court erred in its conclusion that the plaintiff had not any right, title or interest in the lands and premises in question, and that said lands and premises vested in the residuary devisees of Heinrich A. Haack. (1 Wash. on Real Property, 176, 179; 4 Kent's Com. 39; *Stow v. Tifft,* 15 Johns. 458; *Hazelton* v. *Lesure,* 9 Allen, 24; *King* v. *Stetson,* 11 id. 407; *Stehlin* v. *Golding,* 15 N. Y. S. R. 814; *Boyd* v. *De La Montagnie,* 73 N. Y. 498, 502; 1 R. S. 728, §§ 51, 53; *Day* v. *Roth,* 18 N. Y. 448; *Lounsbury* v.

*Purdy*, Id. 515 ; *Siemon* v. *Schurck*, 29 id. 598 ; *Fairchild* v. *Fairchild*, 64 id. 471, 476.) The court below, both at General and Special Term, erred in holding that plaintiff was precluded from asserting her equitable interest in the premises by reason of her accepting the benefit conferred upon her by the will. *Havens* v. *Sackett*, 15 N. Y. 365, 369 ; *Clementson* v. *Ganby*, 1 Kee, 309 ; 1 Jarman on Wills, 451, 452 ; *Dummer* v. *Pitcher*, 2 Myl. & K. 202 ; *Havens* v. *Sackett*, 15 N. Y., 365, 370 ; *Pennsylvania Co.* v. *Stokes*, 61 Pa. St. 136 ; *Gregory* v. *Gates*, 30 Gratt. 83 ; *Ditch* v. *Sennott*, 117 Ill. 363 ; 2 R. S. 57, §§ 4, 5 ; *Beck* v. *McGillis*, 9 Barb. 35 ; 1 Jarman on Wills, 453, 454 ; 1 Washburn on Real Property, 676 ; *McDermott* v. *French*, 15 N. J. Eq. 81 ; 4 Kent's Com. 363 ; *Havens* v. *Sackett*, 15 N. Y. 365 ; *Ditch* v. *Sennott*, 117 Ill. 362 ; *Church* v. *Kemble*, 5 Sim. 525 ; 2 Story's Eq. Juris., §§ 1086, 1089, 1097, 1098 ; *Blake* v. *Bunbury*, 1 Ves. 515 ; *Ranclyffe* v. *Parkyns*, 6 Dow. 149, 169, 185 ; Kerr on Fraud, 453 ; *Wells* v. *Robinson*, 13 Cal. 133, 142 ; *Pusey* v. *Desbouvrie*, 3 P. Wms. 315 *Hindley* v. *Hindley*, 29 Hun. 318.

*Rudolph Rabe* for respondent. The plaintiff's exception to the finding of fact that no mistake was made in omitting her name, as one of the grantees, from the conveyance sought to be reformed, is not tenable. (Bispham on Eq. [4th ed.], 240 ; *Mead* v. *W. F. Ins. Co.*, 64 N. Y. 453, 455.) The plaintiff's claim is also subject to the further objection that it is barred by invoking against it the equitable doctrine of " Election." (*Thelusson* v. *Woodford*, 13 Ves. 226 ; 1 Russ. & Mylm, 254 ; 1 Dow, 249 ; *Ker* v. *Wauchope*, 1 Bligh, 21, 22 ; *Tibbitts* v. *Tibbitts*, 19 Ves. 663 ; *Noys* v. *Mordaunt*, 2 Vern. 581 ; *Havens* v. *Sackett*, 15 N. Y. 369 ; Pomeroy on Eq. Juris. 509, § 466 ; *Waters* v. *Howard*, 1 Md. Ch. 112.) The exception of plaintiff to the refusal of the court to find " that by reason of *fraud* the plaintiff's name was omitted as one of the grantees in the deed in question should not be sustained." (Bigelow on Frauds, 450 ; *Faure* v. *Martin*, 7 N. Y. 210, 218 ; *Bailey* v.

*Ryder*, 10 id. 363; *Chautauqua Bank* v. *White*, 6 id. 236; 39 Cal. 532.

HAIGHT J. This action was brought for the reformation of a deed executed by John Albert Ropke to Heinrich A. Haack, dated the 6th day of October, 1879, conveying certain real estate in the city of New York, by inserting the name of the plaintiff as one of the grantees therein and adjudging her to be the owner of one undivided half thereof.

The trial court has found as facts that William Ropke died seized of two parcels of real estate, one situated in the city of Brooklyn, and the other in the city of New York, each valued at the sum of $20,000; that he left him surviving three daughters and one son, of which the plaintiff was one, who had become vested as tenants in common of the real estate so left by him; that on or about the 6th day of October, 1879, they entered into an agreement to the effect that the lands situated in the city of Brooklyn should be conveyed to the plaintiff's brother, John Ropke, upon payment by him of the sum of $10,000 to one of the plaintiff's sisters; and that the lands situated in the city of New York should be conveyed to him in order that the same should be conveyed by him to the plaintiff and her husband, Heinrich A. Haack, upon payment by her husband of the sum of $10,000 to the other sister; that the plaintiff's interest in the estate should remain in the New York property; that instruments in writing intended to execute and consummate the agreement were executed and delivered, and the sums of money so agreed were paid by John Ropke and the plaintiff's husband respectively; that the deed executed by John A. Ropke of the New York property, pursuant to the agreement, ran to Heinrich A. Haack, the plaintiff's husband, as the sole grantee; and that the plaintiff received no consideration whatever for conveying her interest in the estate of her father to her husband; that she did not know of it until after the death of her husband and until the month of September, 1883, but had always understood and believed that the title had been taken in the name of herself and her husband, pursuant to the agreement.

The trial court further found as a fact that no mistake was made in omitting from the deed mentioned, the name of the plaintiff as one of the grantees or parties of the second part; and, as conclusions of law, that it was valid and effectual as against the plaintiff and conveyed the entire title to her husband.

Exceptions were taken to the last finding of fact as well as to the conclusions of law.

There is an apparent conflict in the finding of fact to the effect that there was no mistake in omitting from the deed the name of the plaintiff, with the findings that precede it. It is our duty to see if they can be reconciled. (*Green* v. *Roworth*, 113 N. Y. 462.) We have, therefore, examined the case with some care for the purpose of determining what was intended by the trial court in making this finding. Upon referring to the requests to find which were submitted by the plaintiff, the trial court repeated the finding of the partition agreement of the children of William Ropke, and that the conveyance was to be made by them to John Ropke, and that he was to convey the New York property to the plaintiff and her husband upon the payment by the husband of the sum of $10,000 to one of the sisters, "and that the plaintiff's interest in the said estate should remain in said New York property," and that the instruments in writing intended to execute and consummate the agreement were executed and delivered, etc. Thus finding that so far as John Ropke was concerned that he executed the deed with the intention and for the purpose of carrying out the agreement. Upon referring to the evidence we find that there was no dispute about the agreement; that all of the children understood it alike; that John Ropke understood that he was to convey to the plaintiff and to her husband, and that the plaintiff's $10,000 was to stay in the property along with her husband, and that in executing the deed he did not stop to read it. The agreement was so understood by Mr. Morgan, the executor of William Ropke, and he appears to have instructed Mr. Bradshaw to draw the deeds in conformity therewith. It seems that Mr. Bradshaw so under-

stood the agreement, but he omitted the name of Mrs. Haack from the deed because her husband stated to him that "he wanted that portion to his wife fixed so it vested in him." He testified, however; that Mrs. Haack was not present, and that he did not consult her to see whether the arrangement was according to her wishes; that he did not ask any questions, but thought that Mr. Haack was a pretty clear-headed fellow, and was taking good care of himself to vest himself with the property. The trial court in its opinion restates the agreement as made between the children of Ropke, and that the plaintiff was to take title to the New York property with her husband, and then refers to the direction of the plaintiff's husband to the conveyancer to draw the deed so that the property would vest in him, and upon this fact appears to have based the conclusion that the idea of a mistake in the transaction could not be upheld. So that, as we understand, the intention and meaning of the trial court in finding that there was no mistake in omitting from the deed the name of the plaintiff, means that there was no mistake so far as the plaintiff's husband was concerned. This construction removes the conflict that otherwise would exist between the findings of fact as made and brings them into harmony with the testimony given.

It next becomes important to consider the interest of Ropke, the grantor, and his relation to the parties. As we have seen, he was the brother of the plaintiff, and one of the four tenants in common to the New York and Brooklyn property, of which his father had died seized. They had agreed upon a partition of the property between them. The sisters had joined in a deed to him with the understanding and agreement that he was to convey the New York property to the plaintiff and her husband upon the payment by the husband of $10,000 to one of the sisters; that the plaintiff's interest was to remain in the New York property. The plaintiff, as one of the four children of William Ropke, was seized of a one-fourth interest of the real estate in New York and Brooklyn. Under the partition agreement she was to convey her interest in the Brooklyn property to her brother, and her entire interest in the real

estate was to vest in the New York property, which would make her interest in that property an undivided one-half. John Ropke in taking the title to the New York property under the agreement to convey, became merely a trustee for that purpose. He was the mere conduit through whom the title was transferred. He had no authority or right to change the contract and convey to other person or persons than those agreed upon. (*Stehlin* v, *Golding*, 15 N. Y. S. R. 814; *Stow* v. *Tifft*, 15 Johns. 458; 1 Wash. on Real Prop. 176.)

The agreement was with the plaintiff, his sister, to convey to her an undivided one-half. Instructions to that effect were given to the scrivener, and the deed was executed by Ropke with the intention and for the purpose of carrying out the agreement. They are both parties to the agreement, and certainly as to them there was a mutual mistake in omitting the plaintiff's name from the deed. It is true -that the agreement also embraced the husband. He was to buy one of the sister's interest for $10,000, and was to receive a deed of the other undivided one-half of the New York property, that being the sister's interest which he had purchased. But this portion of the agreement is independent of that requiring Ropke to convey to the plaintiff her interest, and gave him no power, right or authority to change, alter or modify the agreement to convey to her.

The trial court, as we have seen, has found that the plaintiff received no consideration for the transfer of her interest in the property to her husband, and that she did not in fact know of it but understood and believed the title to be in herself until after his death. Here there was not even a gratuitous transfer of the property from the wife to the husband. There was no intention to convey or understanding that conveyance had been made. In such a case it is not necessary that there should be a fraudulent intention on the part of the husband to obtain title. Haack did not request the scrivener to omit the plaintiff's name from the deed, but as the scrivener recollects he requested that the deed should be so drawn that her interest would vest in him. This testimony was given

some six years after the transaction, and his recollection may not be exact in reference to the words used. Haack might not have intended to perpetrate a fraud upon his wife. But it would either be a fraud or a mistake, which would be sufficient to vitiate the conveyance. Occupying the confidential relation of husband and obtaining the conveyance under the circumstances disclosed, casts upon him the burden of showing that the conveyance was free from fraud or mistake. (*Boyd* v. *DeLa Montagnie,* 73 N. Y. 498.)

Again, we do not understand that the rights of the plaintiff would be affected even though it should be found that her husband acted for her as her agent. The consideration for the conveyance of the undivided one-half was hers. If her husband without her knowledge and consent procured the conveyance to be made to him, she would still be entitled to have it adjudged that he held the same in trust for her, notwithstanding the provisions of the statute which provide that: "Where a grant for a valuable consideration shall be made to one person and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance." (1 R. S., 728, § 51.)

For under section 53 the provisions of section 51: "Do not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name without the consent or knowledge of the person paying the consideration." (*Reitz* v. *Reitz,* 80 N. Y. 538, 542.)

We therefore agree with the General Term, so far as this branch of the case is concerned, that the plaintiff has established a good cause of action for a reformation of the deed.

It remains to be seen whether she has forfeited that right by accepting the devise and legacy contained in the will of of her deceased husband.

In June, 1883, Heinrich A. Haack, the plaintiff's husband, died, leaving a last will and testament, which has been duly

proved and admitted to probate. By it he devised to his wife, the plaintiff, the real estate in Brooklyn on which he lived, and bequeathed to her the sum of $10,000 in cash, which was to be in lieu of dower. He then gave his gold watch and chain to Henry Oest, and $4,000 each to Wilhelmina Oest and Henry Oest, his nephew and niece. It then provides: " I give and devise to my sisters, Wilhelmina Ropke and Mary Oest, and my brother, Deidrick Haack, all the rest, residue and remainder of my estate, share and share alike." The plaintiff has accepted the provisions made in the will in her behalf, and the trial court has found that this acceptance on her part amounts to an election to hold under the will, and precludes her from setting up any legal or equitable claim of her own to the real estate in question. The rule appears to be unquestioned by the parties. It was well stated by DENIO, Ch. J., in the case of *Havens* v. *Sackett* (15 N. Y. 365–369). He there says: " One who accepts a benefit under a deed or will, must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it. For example, if a testator has attempted to dispose of property in his own name and has given a benefit to the person to whom that property belongs, the legatee or devisee accepting the benefit so given to him must make good the testator's attempted disposition." If, therefore, the plaintiff's late husband has devised the real estate in equity belonging to her, her acceptance of the devise and bequest, under the will, precludes her right to maintain this action. She cannot accept and then prevent the other devisees under the will from receiving the portion intended for them. But, has he devised the real estate which equitably belonged to her? He knew that an undivided one-half of the property in question belonged to her, as her sole and separate property, having descended to her from her deceased father; he knew that he had taken the title of her interest in his own name, without her knowledge or consent; that equitably, it still belonged to her. He only gives to his brothers and sisters the residue and remainder of his estate, share and share alike ;

he mentions no parcel of real estate intended to be covered by this provision, neither does he pretend to give them anything but that which is *his*. So that we are unable to see that there is anything in the will that is inconsistent with the claims of the plaintiff. It is argued that by allowing her to recover her interest in the real estate the provisions of the will will be defeated, and thus it is evident that he intended to devise that portion of the real estate equitably belonging to her; but such does not appear to us to be the effect. Under the partition agreement, she was to retain her interest in the real estate, which, as we have seen, was an undivided one-half. This was her sole and separate property. Her husband purchased the interest of her sister for $10,000, which vested in him the other undivided one-half. Their interests were separate and distinct; it was that of tenants in common and not of joint tenants or tenants by the entirety. By accepting the provisions made for her by the will, she waived her right to dower. Therefore, her husband's undivided one-half of the real estate remained to be disposed of by the will. It appears that a legacy of $10,000 was given to her and two other legacies of $4,000 each were given to a nephew and niece, making $18,000. The report of the executors show that the personal estate coming to their hands amounted to the sum of $20,567.79 and the debts amounted to $1,739.62, leaving a balance of $18,828.17. The will contains no provisions charging the payment of the legacies upon the real estate, and, in view of the fact that the personal estate exceeded the amount of the legacies, we must assume that he expected and intended that they should be paid out of his personal property. This leaves his undivided half of the real estate in New York, which, at the time of his death, was valued at $12,500, to pass to his brother and two sisters, under the residuary clause, thus carrying out all of the provisions of the will, doing justly to all objects of his bounty and robbing no one. If the conclusion of the trial court is correct, a very different result will be reached, for, under that view, the plaintiff, his widow, will be left without any substantial provisions made for her support .

and maintenance out of his estate. The real estate devised to her was encumbered by a mortgage for $5,000. Prey, one of the defendant's witnesses, testified that it was worth about $3,000 aside from the mortgage, which we must assume to be its full value. This added to the $10,000 bequeathed to her, makes $13,000, the entire amount that she get under the will.

If the real estate in question was worth $25,000 at the time of his death, as claimed by the respondents, her half which was taken from her by her husband was worth $12,500. The provisions of the will, therefore, but barely pay her for that which was her own, and, at most, leaves her but $500, which she gets in lieu of dower, for her support and maintenance; and this out of an estate left by her husband of upwards of $36,000, aside from her half of the real estate. It does not appear to us that such was the purpose or intent of her husband.

We are consequently of the opinion that the judgment should be reversed and a new trial ordered, and that the costs should abide the event.

All concur, except FOLLETT, Ch. J., dissenting, and BRADLEY, J., not voting.

Judgment reversed.