MARY E. BELL, Appellee, *vs.* ULYSSES C. NYE, Appellant.

*Opinion filed October 26, 1912.*

1. WILLS—*when widow is not required to elect to take under will or relinquish title to her own land.* Where a testator devises the "home farm" and certain personal property to his wife for life upon the express provision that she accept the devise in lieu of dower, the wife, by accepting the devise, does not thereby relinquish her title to eighty acres of land belonging to her, which was included in the description of the home farm in the will.

2. REAL PROPERTY—*purchaser is chargeable with notice of what the records disclose.* A purchaser of land is chargeable with notice of all that an examination of the records would disclose as to the condition of the title.

APPEAL from the Circuit Court of Ogle county; the Hon. OSCAR E. HEARD, Judge, presiding.

FRANK E. REED, for appellant.

J. C. SEYSTER, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Michael Stonebraker died testate in 1859, leaving his wife, Catherine Stonebraker, and his six children, surviving him. He died seized of 709.78 acres of land in Ogle county and a considerable amount of personal property. He resided upon one tract of this land containing 160 acres and occupied it as his homestead at the time of his death. Adjoining this tract, and constituting a part of what was known as the home farm, were 80 acres belonging to his wife, Catherine Stonebraker, which had been devised to

her by her father. Under the law as it existed at that time he held an estate by the curtesy in this 80-acre tract. The first clause of the will of Michael Stonebraker is as follows:

"*First*—I give and bequeath to my wife, Catherine Stonebraker, the home farm on which we now reside, during her natural life, described as follows, [describing 240 acres, including the 80 acres owned by Catherine Stonebraker,] and also $3000 in money, and personal property to be selected by her as she may wish, and paid to her by the executors of this will and to be accepted and received by her in lieu of dower, and after her death to be equally divided between my heirs, share and share alike, to my children, each to have an equal share of the whole amount."

The will appointed his wife and his brother as executors. They qualified, administered upon the estate and were finally discharged. Appraisers fixed the amount of the widow's award at $692, which she waived and did not accept. She did not renounce the will, but she continued to live in the homestead and remained in possession of that tract, together with the 80 acres adjoining, until the time of her death, in 1910. About a year after the death of Michael Stonebraker, the widow, Catherine, married John Nye, and appellant, Ulysses C. Nye, is a child of this union. The children of Michael Stonebraker always treated the whole of the 240 acres constituting the home farm as a part of the lands which had been devised to them. As the result of various conveyances among them, the undivided one-sixth of the 240 acres was conveyed to Mary E. Bell, the appellee and one of the children, and the undivided two-thirds thereof to her husband. In 1909, about one year before her death, Catherine Nye conveyed the 80 acres which had been devised to her by her father, to her son, Ulysses C. Nye. Upon her death, in the following year, this bill was filed in the circuit court of Ogle county by

Mary E. Bell and her husband to quiet the title to the 80-acre tract and to remove as a cloud thereon the deed from Mrs. Nye to appellant. During the progress of the cause, Thomas J. Bell, the husband of appellee, died testate, devising all of his property to appellee. The suit thereafter proceeded in her name, as sole complainant. The master found the issues for appellant and reported recommending that the bill be dismissed for want of equity. The court sustained exceptions to the master's report, and decreed that appellee is seized in fee simple of said land and that appellant has no right, title or interest in the same. From that decree this appeal has been perfected.

The first question presented for our consideration by this record is whether the widow of Michael Stonebraker was required to elect, in equity, between taking under the will of her husband and relinquishing the title to her own land. In the view we take the determination of this question will dispose of the whole case.

Appellant urges, among other reasons, that the doctrine of equitable election does not apply because it does not appear from the will that it was the clear and unmistakable intention of the testator to dispose of the lands belonging to the widow. There is some basis for this contention, but as we are of the opinion that the doctrine of election does not apply in this case in any event, we will treat the will as though the intention of the testator to devise the widow's lands was clearly expressed.

In *Carper* v. *Crowl*, 149 Ill. 465, was presented a question very similar to the one now before us. In that case, after a somewhat exhaustive discussion of the authorities on the question when the doctrine of election, as administered by courts of equity, will be applied, we deduced the following rule: "It would therefore seem indispensable to the application of the doctrine of election, that there be, first, a plurality of gifts or two inconsistent or alternative rights or claims in property devised, the choice of one by

the devisee being intended to exclude him from the benefit of the other; and second, in case the property of the devisee is disposed of by the will and he chooses to assert his right to such property against the will, that there be a fund for his benefit given·by the will, which can be laid hold of to compensate the parties whose right to take under the will is defended by the election." Applying this rule to this case, it must be apparent that no equitable election was required on the part of the widow. The devise to the widow was made upon the express condition that it be accepted in lieu of dower. From the evidence it appears that the testator devised to the widow approximately the actual value of her dower and other statutory rights in his estate. The master found that she took under the will slightly less than she would have received under the statute had she renounced, and we perceive no error in his computation. The devise to her was not such a fund for her benefit as could be. laid hold of to compensate the other devisees, as she was entitled to that proportion of the estate whether her husband died testate or intestate.

The question of equitable election involved in *Carper* v. *Crowl, supra,* is so nearly identical with the question here that what was said in that case is clearly applicable here. We there said: "It is apparent from this record that under the will the widow was not a beneficiary of any fund out of which compensation could be made. By the will the support of the daughter, Maria A. Crowl, and a legacy of $3000 for her benefit, were made a charge upon the homestead devised to the wife for life. By law the widow was entitled to dower in the whole of the 766½ acres of land of which her husband died seized. It is shown, as we think, that the land of the husband devised to her for life was not an average one-third of the land owned by the testator, so that it is clear that by the devise of the land she took nothing in excess of her dower. Again, it seems clear from the evidence that, excluding the widow's

award, as must be done, she received under the will less than one-third of the personal estate after the payment of debts, which amount she would have been entitled to under the statute. (Gross' Stat. 1869, chap. 34.) The provision made by the will was therefore in lieu of, and not in excess of, her rights in her husband's estate as widow, and she took the same, not as a beneficiary under the will, but as a purchaser. In *Blatchford* v. *Newberry,* 99 Ill. 62, we said: 'A provision by will in lieu of dower is, in fact and legal effect, a mere offer by the testator to purchase out the dower interest for the benefit of his estate.' In *Isenhart* v. *Brown,* 1 Edw. Ch. 413, the court, in speaking of a devise in lieu of dower, said: 'It is the price put by the testator himself upon the right and which she is at liberty to accept. Her relinquishment of dower forms a valuable consideration for the testamentary gifts. In this point of view she becomes a purchaser of the property left to her by the will. So, on the other hand, the husband offers a price for his wife's legal right of dower which he proposes to extinguish, and if she agrees to the terms she relinquishes it and is entitled to the price. It is therefore a matter of contract or convention between them, and what she thus becomes entitled to receive is not by way of bounty, like other general bequests, but as purchase money for what she relinquishes.' See 2 Scribner on Dower, 469; *Fitts et ux.* v. *Cook,* 5 Cush. 569; *Carder* v. *Commissioners of Fayette County,* 16 Ohio St. 366."

Appellee insists that the acts and declarations of her mother, Mrs. Nye, or her silence when it was her duty to speak, will estop her and her assigns from claiming this land, and particularly the five-sixths part thereof which it is claimed appellee acquired as an innocent purchaser for value. One of the grounds urged for such estoppel is, that Mrs. Nye and her co-executor attempted to inventory her land as the property of the testator. A certain 80 acres were inventoried by the executors as the property of the

testator and as having been willed to him by James Coffman, the father of Mrs. Nye. The land was misdescribed if it was meant to refer to this tract, and no one can tell with certainty whether it was intended to inventory this particular tract. An examination of the Coffman will would disclose the fact that the land here involved was devised to the daughter and not to her husband, and this statement of the source of the title afforded notice which it would be the duty of anyone dealing with the land to follow up. Nothing is disclosed by the evidence which would estop Catherine Nye from claiming title to this land. She was in possession of it from the time of the death of Michael Stonebraker until she conveyed it to appellant. It is not shown that appellee or her husband were ever deceived by Mrs. Nye as to the condition of the title. It appears from the evidence that when appellee purchased the one-sixth interest in this land from her sister she made no examination of the record to ascertain the condition of the title and was not influenced by anything said or done by her mother. The husband of appellee also apparently purchased the interests acquired by him without making any examination of the records. Appellee does not occupy the position of an innocent purchaser, but is chargeable with all that an examination of the records would have disclosed as to the condition of the title to this land.

The only election made by Mrs. Nye, and the only one required of her, was the election required by the statute. Her title to the 80 acres in question was not affected by her acceptance of the provisions made for her in the will. That title remained in her to the same extent as if she had formally renounced the provisions of the will for her benefit, and by her deed it passed to appellant.

The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the bill for want of equity. 　　　*Reversed and remanded, with directions.*