In the Matter of the Judicial Settlement of the Account of BANK OF JAMESTOWN, as Executor of J. ALBERT SMITH, Deceased.

MAYME SMITH, Appellant; BANK OF JAMESTOWN, as Executor of J. ALBERT SMITH, Deceased, Respondent.

Fourth Department, January 19, 1935.

*George E. Phillies*, for the appellant.

*Allen E. Bargar*, for the respondent.

EDGCOMB, J. By a decree of the Surrogate's Court of Chautauqua county, Mayme Smith, the widow of the decedent, has been deprived of the privilege of exercising the personal right of election given to a surviving spouse of a testator by section 18

of the Decedent Estate Law to take her distributive share of her husband's estate as in intestacy. She challenges the correctness of this ruling.

The section of the Decedent Estate Law above referred to applies only in case the testator died after August 31, 1930, and left a will executed after that date.

Decedent died on the 22d day of August, 1933. He left a will which was executed on the 12th day of September, 1928. He made a codicil on April 3, 1933, in which he reaffirmed the original will, except as modified by the subsequent instrument. The effect of the codicil was to republish the original will, and make it speak from the new date. Decedent having died after August 31, 1930, and having executed the codicil to his will subsequent to that date, appellant may avail herself of the provisions of the statute, unless the facts bring her within the limitations, conditions or exceptions therein specified. (*Matter of Greenberg*, 261 N. Y. 474.)

In an action brought in the Supreme Court of this State by the appellant against her husband, a judgment of separation was granted on the 28th day of July, 1925. That decree, however, did not dissolve the marriage relation of the parties. They still remained husband and wife in the eyes of the law. (*People ex rel. Comrs. of Charities* v. *Cullen*, 153 N. Y. 629, 636.) It operated merely as a cessation of cohabitation between the parties, and was subject at any time to a complete restoration of their marital status by reconciliation.

This decree of separation did not deprive appellant of the privilege of election given her by the statute. The spouse against whom a final judgment of separation has been rendered is the only one who is divested of such right. (Dec. Est. Law, § 18, subd. 3.)

Furthermore, appellant and her husband adjusted their marital differences in the fall of 1926. They went through a second marriage ceremony on the third of October of that year. That was a needless and superfluous act, because they were already man and wife. They lived together from that date down to the time of decedent's death.

Appellant has, therefore, brought herself within the provisions of the statute, unless she has waived the privilege thus accorded her by the act. This we do not think she has done.

Subdivision 9 of section 18 of the Decedent Estate Law prescribes how such waiver may be effected. It must be by an instrument in writing, subscribed and duly acknowledged by the surviving spouse.

Back in 1925, when the parties were having their marital troubles, they apparently attempted to get the question of appel-

lant's support out of the way. The separation decree provides that the husband shall not be liable to the wife for any support or maintenance. Four days before the granting of the decree, appellant, in consideration of the sum of $500, executed a general release, in which she freed and discharged the decedent from all claims of every name and nature from the beginning of the world to the date of the instrument. Appellant's right to elect to take her distributive share of her husband's estate did not exist at that time, and the instrument which she signed did not extinguish such right.

Neither can it be said that the appellant is deprived of such privilege by reason of the power of attorney which she executed on July 24, 1925, and in which she gave to her husband the perpetual and irrevocable right to sign her name to any deed or transfer of her dower right in his property. This power of attorney was never utilized, and the privilege granted thereby was never exercised. Even if it could be said that the instrument was intended as a release of any claim which appellant had in the real property of her husband, it would be ineffective, because a wife during coverture cannot effectively release her dower right to her husband alone. (*Carney* v. *Morrison*, 223 App. Div. 244, 247; appeal dismissed, 249 N. Y. 511; *Dworsky* v. *Arndtstein*, 29 App. Div. 274, 280; *Elmendorf* v. *Lockwood*, 57 N. Y. 322, 325.) .

Respondent puts especial stress upon an instrument executed by both the appellant and decedent, and acknowledged by them before a notary public on the 4th day of October, 1928, by the terms of which each released the estate of the other from their " right of inheritance or dower or set-off of exempt property to the end that the heirs of each may take all of the property of which either dies seized and possessed either by will or inheritance without any claim being made by the other in any name or nature whatsoever." It is asserted that this instrument is a waiver and release of the right given by statute to the appellant to elect to take her distributive share in her husband's estate.

The statutory right which is invoked by the appellant is a part of an act passed by the Legislature in 1929, in effect September 1, 1930, and did not exist when the mutual release in question was executed. That fact alone, however, does not make the instrument inoperative as a release or waiver of appellant's right.

If the execution of this release was the free and unrestrained act of the appellant, and if her intention to relinquish every right which she had or might thereafter have in her husband's estate is clear and certain, then, undoubtedly, the instrument will prevent her from taking advantage of her statutory privilege of election,

even though that right did not exist at the time of the execution of the release.

While the appellant concedes that she signed this release, she insists that she was induced to do so by fraud and deceit practiced upon her by her late husband, and that she did not understand its nature, and never knew that she was executing any such agreement.

The undisputed evidence discloses the fact that the evening before this so-called mutual release was signed and acknowledged, decedent, at a family dinner given in honor of his wife's birthday, announced that he had made his will, and had taken care of the appellant, and that she had no occasion for future worry. This was not true. While he had made his will a few days before, he left nothing to his wife, except his household goods. Decedent also told the appellant on this occasion that he had " made out partnership papers, so that if anything happened to him, she would get the business." The next day Mr. and Mrs. Smith went to Mr. Ferguson's store, and decedent said, " Now that we are here, Mr. Ferguson is a notary public, let's go in and sign these papers that I told you about." Decedent took a paper from his pocket, which had previously been prepared, evidently by some attorney, and told his wife that it was the agreement which he had spoken to her about on the previous evening. Relying upon his honesty and good faith, and on the truth of his statement, and believing the instrument to be a partnership agreement, appellant signed and acknowledged the execution of the paper, without reading or examining it. It turned out to be the mutual release in question which she signed, and not the partnership agreement which she thought she was signing. Under these circumstances, we do not think that the instrument can be considered a binding agreement, or that it constitutes a release of appellant's right of election given to her by the Decedent Estate Law.

While fraud is never presumed, and while, as a general proposition, the burden of establishing it rests upon him who asserts it, that rule is somewhat relaxed in cases where a fiduciary relation exists between the parties to a transaction, and where one is a dominant and controlling force over the other. In such case, if the superior party obtains a possible benefit, equity raises a presumption against the validity of the proceeding, and casts upon such party the burden of proving its honesty and integrity, and thereby overcoming such inference. (*Hayes* v. *Kerr*, 19 App. Div. 91; *Butler* v. *Prentiss*, 158 N. Y. 49; *Allen* v. *LaVaud*, 213 id. 322; *Cowee* v. *Cornell*, 75 id. 91, 99.)

A fiduciary and confidential relation exists between the average husband and wife, and when the husband obtains an advantage by reason of a contract made by him with his wife, the burden is cast upon him to show that the agreement was freely and deliberately made, and that it is fair and equitable. (*Boyd* v. *De La Montagnie*, 73 N. Y. 498, 502; *Lamb* v. *Lamb*, 18 App. Div. 250, 257; *Haack* v. *Weicken*, 118 N. Y. 67.)

So far as the evidence shows, there was no consideration for this agreement, except that stated in the release itself. It is there recited that the parties had been " divorced " from bed and board, and had settled their affairs. But that fact could not possibly be a consideration for the new agreement. It is claimed, however, that the mutual release by each party of his or her interest in the property and estate of the other constitutes a sufficient consideration for the contract. It does not appear what property, if any, the appellant owned at the date the mutual release was executed, or that the transaction was fair or equitable so far as the wife was concerned.

Under all the circumstances, and in the light of the surroundings under which this release was executed, it can hardly be said that appellant's execution of the instrument in question was her free and deliberate act.

In order to vitiate this release, it is unnecessary to show actual or positive fraud on decedent's part. If there was a breach by the decedent of any duty which he owed his wife, or if he gained an undue advantage over her, or if he misled her to her prejudice, even though he intended no actual wrong, he still would be guilty of constructive fraud, and the instrument in question would be null and void. (*Haack* v. *Weicken*, 118 N. Y. 67, 73, 74; *Boyd* v. *De La Montagnie*, 73 id. 498; *Case* v. *Case*, 49 Hun, 83.)

If this particular transaction was open and above board, it is difficult to imagine what was its purpose. Nothing had occurred which called for a mutual release by husband and wife in the property of the other. Their marital disputes had been adjusted nearly two years before, and they were living together in peace and harmony, so far as the record discloses. Why the necessity of this release? Was it because decedent had just made his will, and had left practically all of his property to his children by a prior marriage, and wanted to shut off any possible interest which his wife might have in his property, and make it impossible for her to contest his will? The lack of any apparent motive which would call for the execution of this release adds much force to appellant's contention that she never knew that she had signed such an instrument, and that she never intended so to do.

It may be stated as a general rule that a party, before he signs an instrument, should read it, or have it read to him, and that he cannot escape the legal effect of his act by a plea that he did not know the contents of the paper, or that his mind never gave assent to its terms. (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159.)

That rule is not applicable here, nor does it deprive the appellant of her right to relief under the peculiar facts disclosed by this record. This is not the case of two strangers, dealing on equal terms. It does not appear whether appellant can read or not. But whatever her ability in that direction may be, she was assured by her husband, in whose honesty and integrity she had a right to rely, that the nature of the instrument which she was asked to sign was a partnership agreement, and not a relinquishment of her rights to his property. He was seeking to take advantage of the trust and confidence which she had in him because of their intimate relations, and to thereby gain an advantage for himself and his estate. Under these circumstances, respondent cannot insist that appellant's negligence in failing to read the instrument which she signed forecloses her from relief, or that it conclusively binds her to the terms of the release which she signed under a misapprehension as to its contents. (*Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *Smith* v. *Smith*, 134 id. 62, 65, 66.)

For the reasons above stated, we think that the surrogate reached a wrong conclusion, and that the decree appealed from should be reversed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and LEWIS, JJ.

Decree reversed on the law and facts, with costs to the appellant payable out of the estate, and matter remitted to the Surrogate's Court to proceed in accordance with the opinion. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.