## COMMISSIONER OF INTERNAL REVENUE v. KELLY'S ESTATE.

### No. 5741.

Circuit Court of Appeals, Seventh Circuit.

July 14, 1936

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Francis I. Howley, Sp. Assts. to the Atty. Gen., for petitioner.

William C. De Lacy, of Washington, D. C., John L. Gilmore, of St. Louis, Mo., and Robert T. Mack, Howard H. Wikoff, and Henry Glenn Ross, all of Chicago, Ill., for respondent.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

This is a proceeding to review the action of the Board of Tax Appeals wherein it overruled the determination of petitioner and held there was no deficiency in the estate tax of Rose A. Kelly, deceased.

The facts, briefly stated, are that John A. Kelly and Rose A. Kelly were husband and wife, living together in the city of Chicago, Ill., for many years prior to the death of the husband in 1927. There lived with them at all times their only child, a son, Francis J. Kelly. A considerable amount of property was accumulated by them in the city of Chicago, and the husband, at the time of his death, owned a valuable piece of property at Madison and Ashland avenues, know as the "Flatiron Building," which will hereinafter be referred to as the "Flatiron property." The husband and wife owned, as joint tenants,

certain real estate located at 112th and Michigan avenue, such property being very valuable, and known as "Roseland," which will hereinafter be referred to as the "Roseland property."

The husband, John A. Kelly, died testate on May 17, 1927. By the terms of his will he gave to his wife, Rose A. Kelly, all of his "household goods and effects." He also gave to her, "in lieu of dower rights and of all other rights, interest and claim which she might have or claim in or to my estate or any part. thereof," the Roseland property during her natural life, and the remainder to his son, Francis J. Kelly, in fee simple. There were certain bequests for the payment of specified sums to individuals each year, and his wife was charged with the responsibility of paying them. She and their son were named executors of his will, and after his death they duly qualified as such and proceeded with the administration of it.

During his lifetime John A. Kelly contracted rather large financial obligations, and at the time of his death was indebted to a considerable extent, although his estate was solvent. One of such obligations consisted of an indebtedness in the principal sum of $150,000, the payment of which was secured by a deed of trust upon the Flatiron property. This indebtedness, together with some accrued interest, was unpaid at the time of his death, and, in the determination of his federal estate tax, the entire amount of indebtedness due under the deed of trust was claimed and allowed as a deduction from his gross estate. Such estate tax return does not list any "household goods or effects" as having been owned by him at the time of his death. After his death, the widow, Rose A. Kelly, and the son, Francis J. Kelly, executed a new deed of trust upon the Flatiron property, which had been devised to the son, and the Roseland property, to secure an indebtedness of $150,000 which they borrowed from the Continental Illinois Bank & Trust Company to liquidate such indebtedness owing by the deceased, John A. Kelly, and for no other purpose. This debt was unpaid in its entirety at the time of the death of the widow, Rose A. Kelly, on October 11, 1930. After her death, the son, Francis J. Kelly, designated executor of her estate, duly qualified as such. A federal estate tax return was filed by him, as such executor, in which he listed as a part of her gross estate the Roseland prop-erty, and fixed as its fair market value the sum of $250,000. He also listed, as a part of her gross estate, household goods of the value of $500.

Upon the Commissioner's determination that there was a deficiency in the estate tax of the decedent, Rose A. Kelly, in the amount of $3,783.16, the executor of her estate filed a petition with the Board of Tax Appeals challenging the correctness of such determination. The contentions of the executor, as to the alleged errors of the Commissioner as asserted in his original petition in such proceeding, were all overruled by the Board, and the Commissioner's determination was sustained. One of the propositions presented in his original petition was that there should be deducted from the gross estate of decedent the above-mentioned indebtedness of $150,000, which amount was owing at the time of her death under the deed of trust executed by her and himself to pay an indebtedness of an identical amount owing by John A. Kelly at the time of his death, and for which his estate had received credit in the settlement of his estate tax. Another proposition presented by him therein was that at the time of the death of John A. Kelly the sum of $30,000 was owing by him to the Continental & Commercial National Bank, which was evidenced by an unmatured note, and which was an individual obligation. This indebtedness was deducted from the gross estate of John A. Kelly in determining his estate tax. After his death, the note was reduced to $27,000, and Rose A. Kelly and Francis J. Kelly executed their note for that amount to the bank, and the bank canceled and surrendered the note of John A. Kelly. There was due upon this note the sum of $24,000 at the time of the death of Rose A. Kelly. Her executor claimed this as a deduction from her gross estate, which was denied by the Commissioner, and his decision sustained by the Board. No separate order was made by the Board disallowing these items as deductions, but the ruling thereon was taken into consideration by it in arriving at its final conclusion that there was no deficiency.

The Board, after the hearing upon the original petition, but before an order was made, and over the objection of the Commissioner, permitted the executor (petitioner in that proceeding) to file an amendment to his original petition. In the amendment he alleged that the decedent,

Rose A. Kelly, had only a life estate in the Roseland property under the provisions of item 3 of the will of John A. Kelly, which property had a fair market value of $250,-000. This proposition was not presented in the original petition. He asked, therefore, that the value of this property be stricken from the federal estate tax return theretofore filed by him as executor of her estate. The Board sustained his contention, and held that the value of the Roseland property should not be included in her gross estate. Having thus excluded this property, the Board decided that "there is no deficiency in the estate tax," and from such decision the Commissioner has filed, and is now prosecuting, this petition for a review thereof.

Respondent's contention is that the decedent is deemed to have elected to take a life estate in the Roseland property under the will of her husband, John A. Kelly, even though such property was owned by her and her husband as joint tenants at the time of his death. He contends that she accepted other property bequeathed to her under the will, and that therefore she took, under the law, only a life estate in the Roseland property. In this contention he was sustained by the Board.

Petitioner's contention is that the decedent took no property under the will to which she was not entitled under the law, and that therefore no election was required, and upon her husband's death she became the owner in fee simple of the entire Roseland property. The question thus presented is whether, under the facts, the decedent became, under the law, the owner in fee simple of the Roseland property, upon her husband's death, or whether, under the provisions of his will, she became the owner of a life estate only.

■ In determining the value of decedent's gross estate at the time of her death, consideration must be given to all of the property owned by her at that time. The Revenue Act provides: "Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." 44 Stat. 9, 70 (see 26 U.S.C.A. § 411).

Therefore, if decedent had only a life estate in the Roseland property at the time of her death, the value of such property should not be considered in determining the value of her gross estate. If, on the other hand, she was, at that time, the owner thereof in fee simple, its value must then be included therein.

■ In considering the question of whether or not decedent was, at the time of her death, the owner in fee simple of the Roseland property, it must be kept in mind that she and her husband, John A. Kelly, were, during the lifetime of both of them, the owner of this property as joint tenants. Under the law, the title to the entire property would vest in the survivor, upon the death of either of them. Smith-Hurd Ann. St.Ill. c. 76, § 1; Cahill's Ill.Rev.St.1933, c. 76, par. 1. Therefore, if John A. Kelly had died intestate, no question would now exist as to the owner of the fee. It would then have vested in his wife, Rose A. Kelly, immediately upon his death. The situation, however, is complicated by the fact that a will was executed by him in which he sought to devise to his wife a life estate only in such property, and the remainder to his son. In such will he also devised to his wife "household goods and effects." The law is plain that, if a benefit is conferred upon a person by the provisions of the will of another, and such will also assumes to devise or bequeath to such person property already owned by him, such person is put to an election as to whether he will take under the will or assert his legal rights and renounce such benefits. He cannot claim under and against it at the same time. The Supreme Court of the United States, in the case of Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 402, 42 L.Ed. 793, quoted with approval from 2 Redfield on Wills, as follows: "Although the testator has no legal power to dispose of the property of another, yet if he assumes to do so by his will, and such person accepts a devise or bequest under the will, it will be a confirmation of such disposition of his own property by the testator."

See Utermehle v. Norment, 197 U.S. 40, 25 S.Ct. 291, 49 L.Ed. 655, 3 Ann.Cas. 520; Carper v. Crowl, 149 Ill. 465, 36 N. E. 1040; Bell v. Nye, 255 Ill. 283, 99 N.E. 610; 42 L.R.A.(N.S.) 1127.

In Smithsonian Institution v. Meech, supra, the Supreme Court also quotes with approval from Beall v. Schley, 2 Gill (Md.) 181, 200, 41 Am.Dec. 415, as follows: "It is only carrying out a plain intent of the testator, and giving to the residuary devisee that which the testator intended, and forbidding the heir from tak-

ing property not designed for him. From the earliest case on the subject, the rule is that a man shall not take a *benefit* under a will, and at the same time defeat the provisions of the instrument." (Our italics.)

It will be seen that the final determination of the question involved will depend largely upon whether or not Rose A. Kelly was required to elect to take under the will or under the law. The principle of election is well settled. The Supreme Judicial Court of Massachusetts very early sanctioned the rule laid down by Chancellor Kent in Glen v. Fisher, 6 Johns. Ch. (N.Y.) 33, 35, 10 Am.Dec. 310, wherein he said, in speaking of the principle of election, it "is an obvious and settled principle in equity," in the following language: "It is now a well settled rule in equity, that if any person shall take any beneficial interest under a will, he shall be held thereby to confirm and ratify every other part of the will, or in other words a man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent the full effect and operation of every part of the will." Hyde v. Baldwin, 17 Pick.(Mass.) 303, 308.

However, as with practically every principle of law, no matter how fundamental or well established it may be, there are cases which, though seemingly within the rule, will be found, upon close analysis, to fall outside its scope. Petitioner concedes that the principle of election, as enunciated, is correct, but contends that it is not applicable in the instant case, for the reason that the decedent received no benefit under the will which required an election. With this contention we are in accord.

By virtue of the statute of Illinois, decedent was entitled to a "widow's award" upon the death of her husband, as follows:

"§ 75. The widow, residing in this State, of a deceased husband whose estate is administered in this State, whether her husband died testate or intestate, shall, in all cases, in exclusion of all debts, claims, charges, legacies and bequests, except funeral expenses, be allowed as her sole and exclusive property forever, * * * the following, to-wit: * * *

"Second—Such sum of money as the appraisers may deem reasonable for the proper support of herself and his minor children for the period of one year after the death of the testator or intestate, in a manner suited to her condition in life, taking into account the condition of the estate of the testator or intestate.

"Such allowance shall in no case be less than five hundred ($500) dollars. * * *

"§ 76. * * * The widow shall be entitled to receive the amount of her award in money, or she may, at her election, accept payment thereof in whole or in part in personal property of deceased at its appraised value. * * *

"§ 77. The right of a widow to her award shall in no case be affected by her renouncing or failing to renounce the benefit of the provisions made for her in the will of her husband, or otherwise." Smith-Hurd Ann.St.Ill. c. 3, §§ 75–77; Cahill's Ill.Rev.St.1933, c. 3, pars. 75–77.

The only provision in the will of John A. Kelly which purported to give decedent anything aside from the property which was hers is found in item 2, wherein he gave her all of his "household goods and effects of whatsoever kind and nature." The record contains no evidence of any household goods or effects owned by him at the time of his death. Furthermore, the estate tax return for his estate contained no such item. Certainly the mere mention of them in his will cannot be accepted as evidence that he was the owner thereof, or of their value. The only evidence of the value of household goods is found in the estate tax return of decedent wherein they are listed as her property at the time of her death at a value of $500. If it be conceded that John A. Kelly was the owner of household goods and effects at the time of his death, although there is no evidence to that effect, and that their value was the same as that contained in the return of decedent, then their value, as shown by her estate tax return, does not exceed the minimum amount of her award under the Illinois Statutes, supra. She took nothing under the will which did not legally belong to her immediately upon her husband's death. In other words, she took no benefit under her husband's will; hence there was no occasion for an election. No devisee or beneficiary under her husband's will was deprived of anything by her failure to elect. In fact, she would have fared much better had her husband died intestate, in which event she would have inherited an interest in the Flatiron property, as well as in any other real estate

owned by him at the time of his death, and she would also have been the owner of a part of his personal property and entitled to her award, of which, under the evidence, she received no part. While these facts do not necessarily mean that she would have made no such election, yet they do indicate clearly that no election was necessary. The will gave her no benefit for accepting that which she was compelled to renounce—her right to the fee simple in the Roseland property. Smith-Hurd Ann. St.Ill. c. 3, § 77; Cahill's Ill.Rev.St.1933, c. 3, par. 77, supra.

In dealing with the question of election, in a case somewhat similar to the instant case, the Supreme Court of the state of Illinois, said: "It is stated in Pom.Eq.Jur., § 469, that, inasmuch as the doctrine of election depends upon the principle of compensation, 'it follows, as a necessary consequence, that it will not be applicable in any case unless there is a fund given to the donee who is compelled to elect, from which compensation can be made to the disappointed parties, or which, perhaps, can be transferred as a whole to such parties.' * * * It would therefore seem indispensable to the application of the doctrine of election that there be (1) a plurality of gifts, or two inconsistent or alternative rights or claims in property devised, the choice of one by the devisee being intended to exclude him from the benefit of the other; and (2) in case the property of the devisee is disposed of by the will, and he chooses to assert his right to such property against the will, that there be a fund for his benefit, given by the will, which can be laid hold of to compensate the parties whose right to take under the will is defeated by the election." Carper v. Crowl, 149 Ill. 465, 36 N.E. 1040, 1043.

In that case it is true the testator did not attempt to devise the fee of the real estate owned by the devisee (widow), but the court held that, even though the fee had been devised, the doctrine of election would have no application, saying: "It is apparent from this record that under the will the widow was not a beneficiary of any fund out of which compensation could be made." The law, as expounded in that case, is simply a restatement of the rule laid down by Lord Laughborough in Briston v. Warde, 2 Ves.Jr. 336: "The doctrine of election never can be applied but where, if an election is made contrary to the will, the interest that would pass by the will can be laid hold of to compensate for what is taken away."

Referring to the bequest to the decedent, Rose A. Kelly, in the instant case, the language of the court in the case of Bell v. Nye, 255 Ill. 283, 99 N.E. 610, 611, 42 L.R.A.(N.S.) 1127, is applicable, wherein it said: "The devise to her was not such a fund for her benefit as could be laid hold of to compensate the other devisees, as she was entitled to that proportion of the estate whether her husband died testate or intestate."

See Haack v. Weicken, 118 N.Y. 67, 23 N.E. 133; Landers v. Landers, 151 Ky. 206, 151 S.W. 386, Ann.Cas.1915A, 223.

■ Thus it is apparent that no election was necessary on the part of the decedent. She was the owner in fee simple of the Roseland property at all times after the death of her husband up to the time of her death. Consequently, the market value of this property at the time of her death should be included as a part of her gross estate.

The Revenue Act of 1926 makes provision for certain deductions in determining the value of the net estate of a decedent, as follows:

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for * * * claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth." 26 U.S.C.A. § 1095 (a) (1), 44 Stat. 72 (now 26 U.S.C.A. § 412 and note).

In his brief respondent contends that, even though it should be determined that the Roseland property belonged to decedent in fee simple at the time of her death, and that it must therefore be included as a part of her gross estate, nevertheless the decision of the Board that "there is no deficiency in the estate tax" must be affirmed. This contention is based upon the theory that the Board erred in denying deductions for the $24,000 and the $150,000 indebtednesses to which he contends in his brief the estate is entitled, and, when these

debts are deducted from the gross estate, the decision of the Board is correct, even though the value of the Roseland property is included therein. These are the two items of indebtedness to which reference has heretofore been made, deduction of which was denied by the Commissioner in his determination of the deficiency tax, in which determination he was sustained by the Board. No cross-petition for the review of an adverse ruling of the Board upon these two propositions was filed by respondent in this proceeding. His position is that no such petition is necessary to present the question of whether such debts should be deducted, in the event of an adverse decision by this court upon the question of the title to the Roseland property presented by petitioner in his petition for review. The Board's decision was that "there is no deficiency in the estate tax"; therefore respondent says that he has the right to ask this court to review the action of the Board with respect to its disallowance of these deductions in an effort to sustain its final decision. This, he contends, is the duty of the court, whether presented by cross-petition or not. It seems that respondent finds support for his position in the case of Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 249, 75 L. Ed. 544, wherein the court said: "Respondents seek to sustain this judgment upon that ground, and also upon the additional ground, which the lower court found against them, that there was no evidence of a conspiracy or combination to monopolize interstate trade. Because there was no cross-petition for certiorari, petitioner insists that the additional ground is not open here for consideration. But respondents do not invoke that ground in order to overthrow the judgment below, but to sustain it; and this they may do. Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520."

It is extremely doubtful whether respondent had the right to file a cross-petition in this proceeding, because he received, by virtue of the Board's decision, all of the relief for which he asked; that is, that there is no deficiency in the estate tax of decedent. He was not aggrieved by such decision, and therefore there was nothing upon which to ask a review. The Supreme Court, in the case of Corning et al. v. Troy Iron & Nail Factory, 15 How. (56 U.S.) 451, 465, 14 L.Ed. 768, said:

"The court were not bound to give any reasons for their decree. The law gives the party aggrieved an appeal from a final decree of an inferior court. But it does not give the party who is not aggrieved an appeal from a decree in his favor because the judge has given no reasons, or recited insufficient ones for a judgment."

See Guarantee Co. of North America v. Phenix Ins. Co., 124 F. 170 (C.C.A.8); Harding v. Federal National Bank (C.C.A.) 31 F.(2d) 914.

■ In deciding whether or not there is a deficiency in decedent's estate tax, the Board of Tax Appeals had several questions to determine. It required a determination of each of these questions before it could arrive at its final conclusion, and each question was considered separately by it, as shown by its written opinion. After each question had been so considered and determined, it then arrived at its final decision, based upon its answer to each question presented, that there is no deficiency tax due. From this final decision, and this alone, the Commissioner filed his petition for a review in this court. True, the errors assigned relate wholly to the question of title to the Roseland property; that is, whether decedent was the owner thereof in fee simple, or whether she was the owner of only a life estate therein. This court having decided that question in favor of the petitioner, the question yet remains whether or not the Board erred in its final decision that there is no estate tax due. That question can be determined only by a consideration of the correctness of the Board's ruling that the respondent is entitled to no deductions for the two items of indebtedness heretofore mentioned.

■ The evidence of the indebtedness of John A. Kelly no longer exists. In the case of the $30,000 indebtedness owing by him at the time of his death, evidenced by his personal note, the payee surrendered such note and accepted in its stead a note in the principal sum of $27,000 ($3,000 having been paid subsequent to his death) executed by Rose A. Kelly and Francis J. Kelly. This is no longer an obligation of the estate of John A. Kelly, but became an obligation of Rose A. Kelly and Francis J. Kelly, and each of them immediately became liable thereon. There was unpaid upon this note, at the time of decedent's death, the principal sum of $24,000. The

same may be said as to the $150,000 indebtedness. The original deed of trust securing the payment of this indebtedness, executed by John A. Kelly, was canceled and surrendered following his death. This obligation was discharged by its payment in full, with accrued interest, by Rose A. Kelly and Francis J. Kelly. True, the money used to discharge this obligation was obtained by the execution of a deed of trust upon both the Flatiron and Roseland properties by Rose A. Kelly and Francis J. Kelly, but the payment nevertheless discharged the debt of John A. Kelly, and the obligation became one of the makers of the new deed of trust. It is thus evident that the decedent, Rose A. Kelly, is liable upon each of these obligations, and they may be asserted as claims against her estate.

The test of whether or not a claim is deductible is whether it is enforceable against decedent's estate. If it is an enforceable claim against her estate, it is then deductible, otherwise it is not. The indebtedness must have been contracted in good faith and "for an adequate and fair consideration in money or money's worth." This does not mean that the "consideration in money or money's worth" must necessarily have passed to decedent in order to make such indebtedness deductible. Commissioner v. Strauss, 77 F.(2d) 401 (C.C.A.7); United States v. Mitchell, 74 F.(2d) 571 (C.C.A.7); Latty v. Commissioner (C.C.A.) 62 F.(2d) 952; Jacobs v. Commissioner, 34 F.(2d) 233 (C.C.A.8).

There can be no doubt but that the indebtedness in question was contracted in good faith and was for a fair and adequate consideration, and is enforceable against decedent's estate.

There should be included in decedent's gross estate the value of the Roseland property. There should also be included, in the deductions to which her estate is entitled under the Revenue Act, and in addition to those already allowed by the Commissioner, the two items of indebtedness evidenced by the note upon which there is unpaid the sum of $24,000 and the $150,000 trust deed and accrued interest, or a total of $174,000. Thus, by computation, it will be found that decedent's estate is liable for no estate tax, and that the Board's decision is correct.

The decision of the Board of Tax Appeals is therefore affirmed.