## FOURTH DEPARTMENT, NOVEMBER, 1957

## (November 8, 1957)

■ In the Matter of the Estate of HERMAN B. WESCHE, Deceased. HOWARD WESCHE, Appellant-Respondent; MYRTLE WESCHE, Respondent-Appellant.— Decree modified on the law and facts in accordance with the memorandum and as modified affirmed, without costs of these appeals to either party. Certain findings of fact disapproved and reversed and new findings made. Memorandum: The executor brought this proceeding in Surrogate's Court to determine the validity and effect of an election under section 18 of the Decedent Estate Law filed by the widow against the will of her deceased

husband. She had prior to his death executed a release of her right to elect against his will. The evidence discloses that prior to the execution of the release the decedent had requested and the wife had consented to execute a release of her right of election as against the "farm" alone. The evidence adduced at the hearing sustains the finding of the Surrogate that the wife at the time she signed the release believed that she was releasing only her rights as against the farm. There was no evidence that she had ever been requested to release her right of election as to any other part of her husband's estate. The evidence supports the inference that the decedent took advantage of the trust and confidence which she had in her husband. He procured her signature to the release without disclosing to her the true meaning and significance thereof. The evidence establishes mistake on one side and fraud on the other. (See *Matter of Smith*, 243 App. Div. 348; *Graham* v. *Graham*, 143 N. Y. 573.) It was within the equitable power of the Surrogate to reform the instrument of release so as to conform to the prior agreement of the parties. (See *Matter of Raymond* v. *Davis*, 248 N. Y. 67; *Matter of Sand*, 178 Misc. 179.) The Surrogate has held, however, that the word "farm" as used by the parties included not only the land and buildings but also the stock, tools and equipment employed in the operation of the farm. Ordinarily the word "farm" includes land and buildings — real estate devoted to agricultural purposes, raising of cattle, dairying, and the like (see Black's Law Dictionary [4th ed.], p. 734; see *Hallett* v. *Taylor*, 177 Mass. 6). We find no basis in the testimony for including "stock, tools and equipment employed in the operation of the farm", within the meaning of the word "farm" as used by the decedent and his wife. All concur, except WILLIAMS, J., who dissents and votes for reversal in the following memorandum: I must dissent from the determination of my associates. It is conceded that the widow of the decedent intended to relinquish her distributive share in a farm owned by decedent. The relinquishment agreement was signed in 1954 about one month after the marriage of the parties, pursuant to an oral premarital agreement of 1952. The written agreement covered all of the assets of the decedent and not just the farm. The widow claims that it was fraudulent insofar as it covers more than the farm. A daughter of the widow, by a former marriage, testified as to the premarital understanding. "Q. What did he say on that occasion about the farm? A. Well, he asked my mother if she would sign the farm over to the boys, being that his wife had worked for it, he would like for his sons to have it and if she would do so he would give her an insurance policy for $1000.00 which would pay off in two years." The Surrogate held that the term "farm" included cattle, equipment, land and buildings. The prevailing members of our court reversed this holding and found that the expression "farm" covered land and buildings only. In this respect I disagree. Words used in family parlance should be given their normally intended meaning in view of all of the circumstances. I doubt if the family expression "farm" was meant to exclude stock and equipment and to refer only to the shell of this operating unit. Nor can I agree that the expression "being that his wife had worked for it" meant that his wife had worked for the land and buildings only. Although the record gives slight assistance in the interpretation of the word, I feel that the Surrogate's finding in this respect was supported by evidence and logic. Precise dictionary and judicial definitions are of scant help in construing the family usage of the term. It is the manner and circumstances of the use that should control. Furthermore, it is my opinion that the finding of fraud by the Surrogate was without basis of fact and that his determination generally, except as to the meaning of "farm", is contrary to and inconsistent with his findings. I would reverse and confirm

the waiver as signed. (Cross appeals from a decree of Allegany Surrogate's Court determining the right of election by a surviving spouse.) Present— McCurn, P. J., Vaughan, Williams, Bastow and Goldman, JJ.